IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-JERSEY,

AT JULY TERM, 1847.

### STUYVESANT v. WOODRUFF.

Two adjoining tracts, each bounding on the public highway, the property severally of the plaintiff and of the defendant, were previously the property of S., who had been accustomed for many years to pass from his mansion on the one, across the other, to and from the public road. After the death of S. the tract upon which he had resided was sold to F., who conveyed to the plaintiff. The adjoining premises are subsequently sold to a purchaser under whom the defendant held. About 19 years after the severance, the defendant closed the way across his premises. *Held*,

1. That previous to the severance, a right of way as an easement, did not exist over the close in question, for an owner cannot have an easement on his own soil.

2. Such right did not pass by the deed to F. under the word *appurtenances*, it not being a way of necessity, and there being no words in the conveyance shewing an intention to create an easement.

3. The plaintiff could not claim the right under an adverse enjoyment of less than twenty years by himself and those under whom he claimed.

Error to the Circuit Court of the county of Hudson.

General John A. Schuyler who died intestate in the year 1817, owned in his lifetime the mansion-house and premises at the time of the trial, and for some time previous, owned and occupied by the plaintiff. He resided upon the said premises until his death, and was at the same time the owner of the adjoining premises, called the Cottage, now owned and occupied by the defendant. Both premises are situate in the county of Hudson, on the easterly side of the Passaic river, and adjoining a public highway. After the death of General Schuyler on the 17th March, 1821, the mansion-house and premises were sold by commissioners, duly authorized, to one Daniel Fox, who occupied the same until 1839, when he conveyed to the plaintiff. After the severance of the premises by sale, the widow became the owner of, and removed to, and occupied the premises now owned by the defendant, where she continued to reside until 1831, when one Tregaskis became the purchaser, who in 1840 conveyed to the defendant. General Schuyler in his lifetime, and Fox and the plaintiff since, had access to their premises by gates erected at the two corners of the lawn; the access through the southerly gate being over a few feet of unenclosed ground now belonging to the defendant and in front of his premises. In November, 1840, the defendant erected a fence in front of his grounds on the line of the public road, and which obstructed the access to the plaintiff's lawn through the gate adjoining the said premises of the defendant. The plaintiff then brought this action in Hudson Circuit Court.

In the first and third counts of his declaration the plaintiff complains that the defendant had injured him by putting up a fence in and upon *the common and public highway,* and thereby hindering and obstructing him from passing from his farm to and upon the highway, and from the highway to and upon his farm,

at a certain place where the plaintiff's farm and the highway adjoined each other, and where the plaintiff had been used and accustomed to pass and repass, and had a right so to do.

In the second count the plaintiff declared that he had, and had been accustomed to have, a right to pass and repass by a *certain way* to and from his farm, into, through, and over a *certain close*, unto and into a certain common and public highway, &c. and that the plaintiff had unlawfully and wrongfully stopped and obstructed the said *way*, so that the plaintiff could not pass and repass to and from his farm "through and upon the *said close*, to and from the said highway," &c.

Upon the trial the judge (Hornblower, C. J.) charged the jury as follows :

" The counsel for the defendant suppose the declaration to be defective : that it sets forth no legal cause of action, and that I ought not to have permitted the plaintiff to give any evidence under it. How far the declaration, or any count contained in it, may be good, upon a general or special demurrer, this is not the time to settle. If defendant's counsel supposed the declaration insufficient, he should have demurred to it in proper time, and taken the opinion of the court on that question. Instead of that he has pleaded to the declaration, denying the facts stated in it, and thereby made his appeal to you, who have now been sworn to decide the facts in issue between the parties. It is too late for me, in this stage of the cause, to entertain objections to the declaration. If the plaintiff has given any evidence of the injury complained of, the cause must go to the jury : and if they find a verdict for the plaintiff, the defendant's counsel, if they think the declaration substantially bad, and that it contain no cause of action, may hereafter move the court in arrest of judgment; and if they sustain the objection, the plaintiff will be defeated, notwithstanding your verdict. At present, our business is to inquire whether the plaintiff has sustained by proof, either of the complaints set forth in his declaration.

In view of the general and undisputed facts in the case, let us proceed to consider the several grounds of complaint.

I. First, then, as to the cause of action set forth in the second count of the declaration.

According to that count, the plaintiff does not pretend that
the land, lying immediately outside of his gate, and over which
his carriage must pass, in order to reach the highway, is his land,
or that it is any part of the highway; but he admits *it was a
close;* a separate and distinct property, belonging to somebody
else, over, upon and through which, by virtue of his *possession*
of the adjoining premises, he had *a right of way*, to pass from
his land *to* the highway and back again.

What, then, is *a right of way ?*—and if the plaintiff had one,
how did he acquire it? 1st. What is a right of way? It is an
easement, or incorporeal hereditament, *in alieno solo.* It is an
inheritable estate, not belonging to *the person* of the occupant,
but annexed to, and forming part of the lands or estate he pos-
sesses. It descends to the heir with the manor, and needs no
special words to convey it: a grant of the lands or the manor
carries with it the right of way, which is annexed to, and a part
of the lands or manor. If the plaintiff, then, has such a right of
way over the lands of the defendant, how did he acquire it? A
man cannot have, what is called and known in law, *an easement,
or right of way*, over *his own* lands, any more than in and thro'
his *own house;* for in and over every part of the one and the
other, he may come and go, when and where he pleases. A right
of way, in the legal sense of the term, is a right to pass, for all,
or for certain purposes, at all, or at certain times, over and upon
*another man's* land, or close. Such a right is always acquired
in this country, by an *actual* or *presumed* grant of the right or
easement. Was there any such easement appurtenant or annex-
ed to the lands now in possession of the plaintiff, while they be-
longed to John A. Schuyler? This could only be in one of two
ways, namely, by a grant to him or his ancestors, or by their or
his use of the way uninterruptedly for twenty years or more.
From the evidence in this cause, the lands, as well of the plain-
tiff as of the defendant, belonged to John A. Schuyler at the time
of his death, and had belonged to his father Arent Schuyler, be-
fore him; but his father owned the lands now in the possession of
the plaintiff, before he owned the lands belonging to the de-
fendant. He purchased the latter of one Van Emburgh, many
years before his death. He, Arent Schuyler, may therefore, by

grant, or by user, have acquired a right of way over Van Em-
burgh's land, (which now belongs to the defendant) before he
purchased it. But if he did, the moment he purchased it, his
right of way, *as such*, ceased to exist. His title to the land ex-
tinguished it, for the moment he owned the soil itself, the inferior
right—*the right of way*, became merged in his superior title, and
from that time he had a right to use any and every part of it as
he pleased. This I lay down as the law of easements, and shall
hereafter refer to authorities in support of it.

If, then, Arent Schuyler had *no right of way*, over the land
now belonging to the defendant, it is clear that his son, John,
had none; for he owned both tracts from the time of his father's
death, until he died himself: and I have already shown that a
man cannot have what the law calls a right of way, over his own
land.

The next inquiry is, whether the plaintiff has acquired in any
way, a right in himself, to pass over and upon the land of the de-
fendant? First, has the plaintiff, and Mr. Fox, under whom he
claims, acquired any such right, either by grant from the defend-
ant, or from those under whom he claims, or by twenty years'
uninterrupted enjoyment of such right of way?

There is no pretence that either the defendant, or any interme-
diate owner between him and Gen. John A. Schuyler, ever made
any *grant* to Mr. Fox, or to the plaintiff, of a right to pass over
the piece of land lying outside of the plaintiff's gate: but never-
theless, if that right has been enjoyed by the plaintiff and those
under whom he claims, *adverse* to the title under which the de-
fendant now claims, for twenty years or more, the law will pre-
sume a grant of such right, and will not now suffer it to be ob-
structed by the owner, or by any one else, to the prejudice of the
plaintiff.

You will then inquire how the facts are in relation to this
matter—that General John A. Schuyler, in his lifetime, Mr. Fox
after the death of Schuyler, and the plaintiff, from the time he
purchased of Fox, successively, down to some time in the year
1841, used and enjoyed the privilege of driving out of and in
this gate, to and from the public road, there is no doubt. That
this was the case, from 1816 to 1841, a period of more than

twenty years, is equally true ; and if the *close* or lot, lying between the gate and the road had been *all that time* owned by the defendant, or by any other stranger, it would have afforded a clear case of a presumptive right in the plaintiff to pass over that *close,* in going to and returning from the highway.   But unfortunately for the plaintiff, there has not been twenty years' *adverse* enjoyment of that easement.   If we go back as far as the lifetime of Mr. Arent Schuyler, and suppose, as some of the witnesses say, that he used to drive wagons and cattle out of his homestead grounds, through a bars at the corner, to the public road ; yet neither he, nor his son John after him, thereby did anything towards gaining *a right of way ;* for it was all the time their own land, while they so used it ; and as I have before said, a man cannot gain *a right of way* over his own land ; or over *one part* of his own land, so as to make it *appurtenant* to another part of his own land ; for his acts are not *adverse* to the rights of anybody ; and a man may use his own land as he pleases.   General Schuyler, it seems, built the gate in 1816, and he, and his family after his death, used it until the 17th of March, 1821, when the commissioners sold the mansion house and adjacent lands to Mr. Fox.   By this conveyance, the title to those premises became severed from the title to the lot now owned by the defendant, and over which this right of way is claimed.   The title to the land of the defendant then remained in the heirs of Schuyler, and from that time the use of *this way* over the *close* in question became adverse.   Now, if Mr. Fox, and the plaintiff since him, continued without interruption to enjoy the use of *that way* for twenty years before the defendant erected the fence complained of, it would clearly give the plaintiff at least a prima facie title to a right of *the way* in question.

But, it is said, if there had been twenty years between the sale to Mr. Fox, and the putting up of this fence by the defendant; and if this way of getting into the road has all that time been used and enjoyed by Mr. Fox and the plaintiff, yet that it has not been an uninterrupted enjoyment.

The defendant says, and has undertaken to prove, that after Mrs. Schuyler became the owner of the land now in his possession, and much within the last twenty years, she, by her son and

agent, objected to Mr. Fox's making a road, or paving the ground outside of his gate, for the reason that he had no right to ride over or cross that land ; that Mr. Fox yielded to that objection, saying with a harsh expression, that she might shut up the gate ; and complained that she had not given him notice sooner ; and that he withdrew his workmen for a day or two, and did not resume the work until after he and Mrs. Schuyler had had an interview ; after which he finished his gateway. The evidence upon this point you will remember. How far it sustains the defendant's allegations, it is for you to say. I have only to add that if such was the fact, then there was an interruption of the twenty years' enjoyment, and nothing less than twenty years' uninterrupted enjoyment since that period, can give a presumptive right to an easement, or right of way over that land ; and if I understand the evidence, twenty years have not expired since that time, for the witnesses say it was not until 1825 that Mr. Fox made his gate, and paved that ground. Laying out of the question, however, the supposed interruption I have just alluded to, it would seem, if I am correct in dates, that Mr. Fox, and the plaintiff claiming under him, had not enjoyed twenty years' use of the passage in question, at the time the fence complained of was put up by the defendant. The deed to Mr. Fox is dated the 17th March, 1821 : then his adverse enjoyment of the way commenced ; because up to that time, both parcels of land belonged to the heirs of General Schuyler ; but the obstruction complained of was put up on the fourth day of November, 1840, which was four months and thirteen days before the expiration of twenty years from the date of the deed to Mr. Fox. If, therefore, gentlemen, I am correct in the dates I have mentioned, and in the legal positions I have stated to you, the plaintiff cannot recover upon the ground of a right of way across the defendant's land, acquired by twenty years' uninterrupted and adverse enjoyment of such rights. But—

II. It is contended, that if the plaintiff is not entitled to recover as for an obstruction to a *right of way*, technically speaking, yet the right of passing out of his premises at the place in question, to the public road, and returning again in the same

place, passed to Mr. Fox by the deed of the commissioners, who stood in the place of Mr. Schuyler : that Schuyler, and his father before him, having been in the habit of passing from his land to the highway for many years, over that portion of his own land which now belongs to the defendant : that the late Mr. Schuyler having made a carriage-way from his house to the highway, over that land, a deed from him to Mr. Fox for the land now belonging to the plaintiff, " *with the appurtenances, &c.*" would have conveyed to Mr. Fox the right of using that carriage-path and way, over the land lying outside of the gate, to and from the highway ; and that as the defendant holds under the same title, but subsequent to the plaintiff's, he took his title and holds the land, subject to the plaintiff's right to pass over his land, to and from the highway. This suggestion and argument of the plaintiff's counsel presents a pure question of law, and I must take the responsibility of settling it the one way or the other. If I err, the injured party will have an opportunity of having my error corrected.

The deed from the commissioners, no doubt, passed all that a deed from Mr. Schuyler himself, in the same terms, would have passed. The question then is, what would such a deed from him have conveyed to Mr. Fox ? Would it have conveyed to him, his heirs and assigns forever, a right to travel over all the rest of Mr. Schuyler's lands, in every direction in which he himself and his servants had been in the habit of passing over them ? I think not. It must be remembered that the way claimed by the plaintiff is not a way of *necessity*. His land is bounded on two sides by public highways, to which he may have access in any direction he pleases. But the plaintiff claims a right to this particular way, by virtue of his deed. But in my opinion, that deed conveyed no more right to Mr. Fox to ride over that part of Mr. Schuyler's land, which laid outside of the granted premises, and which now belongs to the defendant, than it did to ride over any other parts of his lands over which he used to ride, and which now belong to other people. While Mr. Schuyler owned the whole farm and adjoining farm, he had a right, and no doubt used the right, of riding over any part of his lands, and going off of them upon adjoining public roads

whenever he pleased, or found it convenient to do so. A deed, therefore, from him to Mr. Fox, for *a part* of his land, would give Mr. Fox no more right to ride over other parts of his lands, than deeds for such other parts to other people, would give them a right to ride over the part conveyed to Mr. Fox ; unless the deed to him expressly granted such right by appropriate terms ; or unless the way as an easement was appurtenant to the land conveyed to him. But I have already said, and I so state the law to be, that a man cannot have an easement *in*, or a *way over* his own land, and consequently, when a man sells a part of his own land, together with all the rights, ways, privileges, and appurtenances, the grantee thereby acquires no right (except by necessity,) of passing over the rest of the grantor's lands, where he used himself to pass, unless the deed expressly makes such grant ; as by the words, " as the same is now used by the grantor," or by some other appropriate words to that effect. It is a mistaken idea that this right of passing over the land in question, passed by the word "*appurtenances*" in the deed to Mr. Fox. Parke Justice in *Plant* v. *James* (2 *Neville and Manning Rep.* 519), says, that the word *appurtenances* means prima facie, an easement, or incorporeal hereditament "*in alieno solo.*" And such is the language of all the books,—a man can have nothing *in* his own soil that is *appurtenant* to it : for, "*cujus est solum, ejus est usque and coelum.*"

"The absolute and unqualified ownership of the soil includes and extinguishes all incidental and minor rights, and therefore, if a man owns a manor or farm, with an easement, or right of way over another man's close, as appurtenant to it, for the purpose of going to a mill, or to church, or to a public road, or for any other purpose ; and afterwards, by purchase or descent, becomes the owner in fee of the *close*, over which the right of way is, the *easement* is immediately extinguished, and becomes merged in the paramount title to the soil ; and that, too, so completely that if the owner should afterwards sell his messuage to which *that way* had been appurtenant, with the usual words, " all the ways, privileges, and appurtenances," it would not revive and carry to his grantee the old *right of way* over the other close.

It having been once extinguished, it could only be revived or re-created by a new grant, or by twenty years' subsequent adverse enjoyment, A *right of way* is not a mere incident or privilege; it is an estate, an incorporeal *hereditament*, and lies in grant, and like all other *hereditaments*, must therefore be created and transmitted by *deed*, actual or presumed. These principles are abundantly sustained by the books now before me. In *Grant* v. *Chase*, 17 *Mass. R.* 443, the question came directly before the court, what easements would pass by a grant of land, " with all the privileges and appurtenances thereunto belonging." The facts were these: The whole premises, consisting of two different lots, fronting on different streets, but adjoining each other, and not separated by any fences, had belonged to one man; and while they belonged to him, he and his tenants had the use in common of a well and outhouse that were on one of the lots. He having died insolvent, his estate was sold by authority of law for the payment of his debts. The lot on which the well and outhouse were, belonged to the plaintiff Grant; the other lot had been conveyed by the executrix, under an order of court, to one *Mason.* In the deed to him the land was described by *metes* and *bounds,* and was conveyed with " *all the privileges and appurtenances thereunto belonging.*" *Mason* afterwards conveyed, and in his deed he granted to his vendee *the privilege* of using the *well and outhouse* on the other lot, with " the right of passing to and from them, &c." The defendant held under this title by several intermediate conveyances, each of which contained a similar grant. At the trial, the judge decided that the *privilege* and *way* passed by the deed from the executrix to *Mason,* and a verdict was given accordingly. But the court set aside the verdict, and granted a new trial, on the ground that the right of *way* did not pass by the deed from the executrix to *Mason.* The court say that the deed from the executrix conveyed nothing but what a deed from the testator himself in the same words, would have conveyed; and it is added, " In that case the easements in question would not have passed, unless they were either parcel of the premises that were expressly conveyed, or necessarily annexed and appendant to them." " This (the Court say) is not like the conveyance of a

manor, a messuage or farm, &c. known by a certain name, and including sundry distinct tenements, buildings or fields, which have been used with the *principal thing,* and reputed parcel of it, and which would pass under the general name of manor, messuage," &c. " This (continues the court) is a *conveyance of a specific piece of land carved out of a larger piece, held by the grantor, and is described by metes and bounds. In such a case nothing could pass as parcel of the granted premises but what is included within the boundaries in the deed ; at least, none of the remaining part held by the grantor.* Neither could these easements pass as *appurtenant,* under the general clause relating to privileges and appurtenances, &c. I have read thus far from the book because I have not had time to make an extract of the matter, and I call your attention more particularly to what follows, as sustaining the principles I have laid down. The court in this case proceed to say : " *It does not appear that the way was ever used or claimed before* (Estes) *the testator became seized of both the houses ; if it existed before that time, the right would have been extinguished by the unity of seisin in Estes* " the testator.

This, you see, is in perfect accordance with the opinion I have expressed and applied to the case before us. It results in this, viz : that if Mr. Arent Schuyler had enjoyed the right of passing over the *close* now belonging to the defendant while it belonged to *Van Emburgh,* and had never purchased that *close,* he would have had a *right of way* which would have descended to his son John, and would then have passed to Mr. Fox by the commissioners' deed to him. But if Mr. Arent Schuyler ever enjoyed such a right of way over Van Emburgh's land, he afterwards purchased that land, and thereby extinguished the *right of way.* His enjoyment of it afterwards was not by way of *easement in another man's land,* but simply the use and enjoyment of his own right, in and over his own land.

" The general rule on this subject," say the Court in Massachusetts, " has not been questioned "—and in addition to the ancient cases collected in *Viner's Abridgment, title, Extinguishment— C* (the court say) may be added the case *Whalley* v. *Thompson and al.* 1 *Bos. and Pul.* 371, and the court goes on

to say that " the exceptions are of things *appendant* to the granted premises, and which are *naturally* or *necessarily annexed to them.* Such is the case of a natural water course, *running to* the granted premises through other lands of the grantor. The case of *lights,* also, in a house or other building, comes within the same exception, when windows open upon other lands of the grantor of the house ; as in *Story* v. *Odin,* 12 *Mass. R.* 157."

So again that Court say, " a way, when it is *strictly of necessity,* has sometimes been considered as falling under the same rule, and as passing to the grantee, or reserved to the grantor, without any express words of grant or reservation. In such case, however, it seems more correct to say, *that the way* is newly created by the implied grant or reservation. But the court said, in the case then at the bar, *the way* claimed (in that case by the defendant, but in this by the plaintiff) was not annexed to the premises granted, by any natural or legal *necessity.* It was a matter of ease and convenience only, and could not be distinguished from the common case of ways and easements which are extinguished by unity of possession, and which cannot arise afterwards without a new grant.

I say, then, that if any existing *easement* or *right of way* be extinguished by a union of title and possession, of the *farm* and the *close,* over which the right of way passes, then while the *farm* and the *close* both belong to one man, no *right of way* across the latter, can arise to him ; and consequently, if no right of way was *appurtenant* to the farm, then nothing passed by the word *appurtenances* in the deed for the farm.

I forbear to read from other books and cases ; they are all, more or less directly, to the same effect. I refer the counsel for the plaintiff to *Harding* v. *Wilson,* 2 *Barn and Cress.* 100 ; *Barlow* v. *Rhodes and al.* 3 *Terwhytts, R.* 280. In *Plant* v. *James,* 2 *Nev. and Man.* 517. Park, Justice, says, nothing is more clear, than that under the word appurtenances, according to its legal sense, an easement which has become extinct by reason of a unity of ownership, does not pass, and he cites 1 *Bulst.* 17, *Sir Fr. Moore,* 467. 1 *Bos. and Pul.* 371. 1 *Taunt.* 205. See, too, *Gale & Whately's law of Easements* 11, *Woolwych on Ways,* 70.

I am therefore of opinion that this right did not pass as *appurtenant* to the land conveyed by the commissioners to Mr. Fox ; because Mr. Schuyler, at the time of his death, had no *easement* or *right of way* as such, over the premises now belonging to the defendant, but only such a right as is common to every landholder to pass or repass over his own lands ; and because Mr. Fox by his deed could claim nothing outside of the metes and bounds prescribed by his deed.

III. The next inquiry is, whether the plaintiff has sustained his complaint as embodied in the first, second, and third counts of his declaration.

I feel it my duty to say that the plaintiff cannot recover on either of these counts unless the land in front of and adjoining the plaintiff's gate, instead of being the *close* of the defendant, is part of the common and public highway—or in other words, unless the fence put up by the defendant, and which is the obstruction complained of, was put up *on* the highway. The question then is, whether the land on which the defendant's fence was put, was *highway*, or whether it was the defendant's own private land ? That that land was ever surveyed, returned and recorded as a public road, is not pretended. If it is public road, it has become so by dedication, or by public user—or in other words, by dedication express or implied. Whether the land in front of the defendant's house was or was not dedicated by Mr. Schuyler to public use, I will not undertake to say ; but I will state what amounts to a dedication, and what does not, and then leave you to decide upon the evidence in the cause. Where the owner of a tract of land lays it out in farms or building lots, marking or leaving out vacant spaces for roads or passage ways, so that purchasers or occupants of the different lots or farms can have access to them, and egress from them ; and then sells and conveys the farms or lots, or any of them, he cannot afterwards reclaim the lands so left open for roads or streets ; for by selling his farms or lots so laid out, he has dedicated the places left open for streets or roads, to that purpose ; for it would be the height of injustice to the purchasers, who bought in view of such roads or streets, to permit the owner afterwards to stop them up. So if the owner of land throws out a piece of it for

a school house, or market place, a church, a parade ground, or a public pleasure ground, and sells the adjoining lands to persons who purchase in reference to such open spaces, and the purposes for which they were designated; or if the owner, having thrown out such piece of land for any such purpose, stands by and sees the public build upon or improve and use it for the purpose for which it was thrown out, it amounts to a dedication, and he cannot afterwards reclaim the land.   But on the other hand, if a man leaves unenclosed, and open to the public highway, a piece of land for his own convenience, he does not thereby dedicate or devote it to public use—so far from it, the law does not require a man to fence off his land from a public road; he may leave it all open—or if he encloses his lands, but finds it convenient for himself, or for persons coming to or going from his house, or mill or store, to leave open a passage way, along and from a highway over his own land, he does not thereby devote such land to public use,—although every body, without discrimination, coming to or going from the owner's house, or mill, or store, on visits of friendship or business, have for any length of time been accustomed to use the land for that purpose, the land so thrown out is not thereby dedicated to the public, nor become a common and public highway; for although all the world may go to the owner's house, or mill, or store, over that piece of land, yet the people going to the owner's house, or mill, or store, *are not the public* in such a sense as the law contemplates, when speaking of the dedication of land to public uses.   I have in my eye several instances, and you are probably familiar with many more, where persons whose houses stand back from the highway, have for the purpose of gaining more safe or convenient access to them, or merely as matter of taste or ornament, thrown out angles or circular pieces of land adjoining the road, in front of or near their houses.   But no one supposes that the owner, simply by doing so, abandons for ever his land to the public.   The truth is as stated by the plaintiff's counsel, that whether lands have been dedicated to the public use or not, is always a question of *intention*.   The proof of that intention may be express, or it may be gathered from circumstances.   It may be express, as by deed or declaration in writing, or as in the case cited by the counsel,

*of Jersey City* v. *Dummer.* In that case, the proprietors of Paulus Hook mapped out the whole island into streets, public squares, blocks and building lots, some of which were designated as places for churches, school houses, market places, and pleasure grounds. This map the proprietors filed in a public office, and they held it out to the public as the plan on which they would sell their lots.

In such, and in similar cases, there is an express dedication, or at least, express evidence of a dedication, and where that is the case, it does not depend upon *user ;* and accordingly when a piece of land has been so expressly dedicated for a street or public road, it is not necessary, as was said by the Supreme Court of the United States in the case cited by counsel from 6 *Peters R.* 506, that the public should use it, by travelling over it, or by working upon it. BUT, as I have already said, a dedication may also be *implied,* or proof of it may be gathered from circumstances. Evidence of a dedication of land for a public road may grow up from lapse of time and long use of it by the public. Such, no doubt, is the only title by which the public have the common highway which runs along the Passaic River in front of the lands belonging to the parties in this suit.

Where a public road has been regularly laid out, and a survey and return of it put on the record, its width and its boundaries can always be ascertained with certainty, by a reference to the record ; but in cases of highways which have become so by dedication and user, the question may often arise as it has done here, whether a certain spot is or is not a part of the highway. And this brings us to an important point in this cause, so far as the plaintiff claims a right to recover on the first or third counts in his declaration. In order to recover under either of those counts, he must satisfy the jury that the land lying immediately in front of the plaintiff's gate, and over which he must pass in going out of his gate, is a part of the public highway. Whether it is so or not, does not depend upon the question whether the carriage wheels or the feet of man and beast travelling along that road, usually or frequently rested upon and passed over that spot of ground : nor does it depend upon the question, whether the overseer of the road ever did any work on that particular

spot of ground, by way of making or mending the road. These are only matters of evidence more or less conclusive according to circumstances. Along the whole line of that road it may be, and probably some of you know the fact that there are many angles or curves, or spots of land, over which the wheels never rolled, or the foot of a traveller never trod—spots covered with grass, and upon which the plow or the shovel of the overseer never was placed—nor can the highway be always ascertained by, or restricted to, the beaten travel-path. It must always then be a question for the jury, to be determined upon the evidence before them. Your inquiry will then be, what has been the understanding of the public? Has it been considered and treated as a part of the highway? Has it been worked on or travelled on, or used for a turn-out place by travellers meeting each other; or has it been left out for the convenience or safety of travellers, owing to the proximity of the travel-path to the precipice on the other side? These are inquiries which must lead you to a decision on this point; and I do not mean to intimate any opinion the one way or the other."

Exceptions were taken to the charge of the judge and a bill sealed; and a verdict under that charge having been rendered for the defendant, a writ of error was brought to this court. The reasons assigned for error and facts further relied on by the parties will sufficiently appear in the opinions delivered.

*A. Whitehead* for plaintiff.

The property was sold with the erections, gates, &c.—an apparent easement which no purchaser could overlook. The right to the easement was conceded without question, and it was used for nearly twenty years. The easement went with the property by the sale. Even though not a technical easement, yet if an apparent easement, used as such during the union of the property in the same owner, without which a full enjoyment could not be had, such would pass. Qualities, conveniences, annexed during unity, will go to the purchaser on separation, as *quasi appendant. Gale & Whately on easements* 46, 49, 52, &c.; *Nicholas* v. *Chamberlain, Cro. Jac.* 121; *Robins* v. *Bairnes,* cited in

*G. & W.* 43 ; *Story* v. *Odin,* 12 *Mass.* 157 ; *Oakley* v. *Stanley,* 5 *Wend.* 523 ; *Grant* v. *Chase,* 17 *Mass.* 443 ; *Whalley* v. *Tompson,* 1 *B. & P.* 371 ; *Rockhill* v. *Adams,* 6 *Wend.* 467.

It should have been left to the jury whether not a way of necessity.

*I. W. Scudder* and *W. Pennington* for defendant.

The first and third counts which go for an obstruction in relation to the common and public highway, may be laid out of the case ; for whether such highway was left to the jury. The second count is for the disturbance of a technical right of way, and the plaintiff's case rests on his claim of a right of way over the close of the defendant. Such right does not here arise by prescription which would require a lapse of twenty years ; nor by necessity, for the premises of the plaintiff border on the public highway. The real question here is, whether the right passed by the deed to Fox. When the deed was made to Fox, the right did not exist because of the unity ; it is a right that can exist only as an easement *in alieno solo.* A dominant and servient tenement necessary. The right of the owner over his own soil is absolute, and not of the inferior kind called an easement. 17 *Mass.* 443 ; 1 *B. & P.* 371 ; *Gale* v. *Whatley* 11 ; *Woolrych on Ways,* 70 (*Law Lib.*)

Did not pass by the deed to Fox. The words " ways," or " easement," or other special words which might be supposed to cover the alleged right, are not in the deed ; but the case does not turn on these words. Will not pass under the word " appurtenant." The distinction taken as to rights in the nature of easements—rights quasi appurtenant—will not support the plaintiff as to the present case. The distinction applies but to those matters which are necessary to the proper enjoyment of the premises, not matters enjoyed by way of easement only. Ways of convenience, as in the present case, are extinguished by unity, and there is nothing in the deed to show an intention to revive the right of way by the grant of a new easement. *Barlow* v. *Rhodes,* 3 *Tyrwhytt* 280 ; *Wright* v. *Rattray,* 1 *East.*

**K**

377; *Gale & Whately*, 64; *Livett* v. *Wilson*, 3 *Bingh.* 115, *Harding* v. *Wilson*, 2 B. & *Cressw.* 99; *Plant* v. *James*, 2 *Nev.* & *Man.* 517, 4 *Ad.* & *Ell.* 749.

Mr. *Vroom* in reply, cited *Hill* v. *Grange*, *Dyer* 130; *Plowd.* 170; *Palm.* 375; *Cro. Eliz.* 16; *Cro. Car.* 169; *Ib.* 17; *Ongley* v. *Chambers*, 1 *Bing.* 483; *Hinchliffe* v. *Kinnoul*, 5 *Bingh.* N. Cas. 1.

WHITEHEAD, J.   Gen. John A. Schuyler was in his life-time and at the time of his death seised and possessed of the two tracts of land now owned by these parties adjoining the Passaic river in the county of Hudson.   He died intestate in 1817 leaving heirs-at-law to whom the premises descended.   After his death the whole tract remained in the possession of his widow and children until the 17th day of March 1821, when Commissioners appointed for the purpose by an act of the legislature of this state, sold and conveyed the mansion house and grounds attached, to one Daniel Fox, who entered upon and continued in possession until the 22d April 1839, when he sold and conveyed the premises to the plaintiff Stuyvesant.   Immediately after the Commissioners' sale to Fox the widow and children of General Schuyler removed to the adjoining premises then known as the Cottage, now owned by the defendant Woodruff.   Her children conveyed the same to her by deed dated 15th July 1826.   She continued in possession until October 1831 when she conveyed to one Tregaskis, who conveyed to the defendant by deed dated 25th August 1840.

There is no discrepancy in the evidence as to the actual line of partition between the parties.   The entrance on the south side of the plaintiff's premises is through a gate upon this division line.   The defendant owns a strip or gore, of open unenclosed land lying between the plaintiff's fence and gate and the travelled part of the public road, so that the plaintiff immediately upon passing through this gate entered upon the defendant's freehold and crossed it in going to the public road.   In November 1840 the defendant erected the fence complained of upon this gore of land which obstructed the plaintiff in his passage through this entrance to and from the public and common high-

way. A question was made upon the trial of the cause whether this gore of land was the defendant's own private property, or the public highway. It was left as a question of fact for the consideration of the jury under the evidence in the cause, and to the ruling of the judge upon this part of the case no exception was taken.

The plaintiff's premises are bounded on two sides by public highways. The case also shows that the obstruction complained of was put up about nineteen years and eight months after the date of the Commissioners' deed to Mr. Fox.

The judge in his charge to the jury laid down the three following propositions as the law of the case, to which the plaintiff's counsel excepted, and upon which errors have been assigned :

First—That the right of passing out of the premises of the plaintiff to the public road, and returning again in the same place, did not pass to Mr. Fox by the deed of the Commissioners, as an appurtenant to the land or otherwise.

Second—That the way claimed by the plaintiff is not a way of necessity, and

Third—That the plaintiff could not claim the right of way, or of passing out of and into the gate way in question, unless it appeared by the evidence that the plaintiff and those under whom he claimed, had been in the uninterrupted possession of the same for twenty years or more, after the Commissioners' conveyance to Mr. Fox. Other errors were assigned by the plaintiff, but they are unimportant in their character and are virtually embraced in those I have stated.

The evidence in the cause shows conclusively that the gate in question, or an entrance at the place where it now is, together with the carriage way leading from it to the mansion house on the plaintiff's premises, had been used by the plaintiff, and those under whom he holds for more than fifty years. Up to the time however of the conveyance to Mr. Fox there could be no right of way as an easement over the close in question by Gen. Schuyler or his heirs, for the reason that until then there had been no severance of the property. A person cannot have a right of way as an easement in the legal sense of the word over his own land. 1 *East* 381.

The Commissioners conveyed the premises to Mr. Fox by metes and bounds, with the privileges, appurtenances &c. without reference to any right of way or easement. Giving to the deed the same effect as if it had been executed by Gen. Schuyler in his life-time, or by his heirs after his death, and assuming that this is not a way of necessity, I do not see upon what principle it can be said to pass by the deed. It did not pass under the word *appurtenances*, for the operation of this word in conveyances is uniformly confined to an existing right and is not understood as creating a new one.   3 *Bos. & Pull.* 371.   So far as respects the right claimed by the plaintiff in this case there was nothing for the word *appurtenances* to operate upon. The general rule to be gathered from the books is this,—that ordinary rights of way do not pass upon a severance of the possession unless the grantor uses language in the conveyance showing that he intended to create the easement *de novo*.   He holds the remaining part of the premises discharged from all easements except such as arise from the necessity of the case.   See *Law of easements by Gale & Whateley, p.* 48.   *Grant* v. *Chase and al.* 17 *Mass. Rep.* 443.

It was insisted by the counsel of the plaintiff that as the gate and carriage way had been used by Gen. Schuyler and his heirs during the unity, and were palpable and manifest at the time of the conveyance to Mr. Fox, and constituted an inducement to the purchase, a grant of the easement might be implied.   In support of this doctrine we were referred to *Gale & Whateley, p.* 40 where it is said :—" Strictly speaking a man cannot subject one part of his property to another by an easement, for no man can have an easement in his own property, but he obtains the same object by the exercise of another right, the general right of property ; but he has not the less thereby permanently altered the quality of the two parts of his heritage ; and if after the annexation of peculiar qualities, he alien one part of his heritage, it seems but reasonable, if the alterations thus made are palpable and manifest, that a purchaser should take the lands burthened or benefitted, as the case may be, by the qualities which the previous owner had undoubtedly the right to attach to it."

It is uncertain from this passage what the authors mean by the peculiar qualities or alterations with which a purchaser should

Stuyvesant v. Woodruff.

take the lands burthened or benefitted, but from other parts of the work it is manifest they mean such alterations as are permanent in their character, or which are evidently necessary. In this view they are supported by the cases to which they refer. The artificial conduit running to the granted premises. (*Cro. Jac.* 121,) passed, not because it was a palpable and manifest alteration made before a part of the heritage was aliened, but because it was *necessary* and *quasi* appendant. The case of lights also in a house or other building comes within the same rule when the windows open upon other land of the grantor of the house. 17 *Mass Rep.* 443 ; 12 *Mass. Rep.* 157. But I can find no case in which it has been decided that the grantee of a part of a tract of land has a right of way over the remaining lands of the grantor merely because the grantor before severance was accustomed to pass over the granted premises to the public highway. If the parties to the Commissioners' deed intended that Mr. Fox should enjoy this right of way, they should have used language creating the easement anew. If it be a way of necessity the law may imply a grant.

Second—Did the judge err in instructing the jury that the way claimed by the plaintiff was not a way of necessity ?

If the plaintiff intended to establish his title to the easement upon the ground of necessity he should have shewn it to be necessary upon the trial. The court and jury could not presume, in the absence of proof that it was necessary to the enjoyment of his property. Now there is not only an entire absence of any evidence of the necessity of this way, but it appears by the bills of exception that on the trial the defendant offered to shew by the cross examination of one of the plaintiff's witnesses, that Mr. Fox when he purchased, and Mr. Stuyvesant the plaintiff could have reached the highway by a nearer route over their own premises by cutting a gate in a different direction, which however was not allowed by the court. Another carriage way and a gate in another part of the premises might have impaired the beauty and symmetry of the place and subjected the party to some expense, but these considerations do not constitute the necessity in the law which would give to him the right of way over his neighbor's land. Under the circumstances of this case

the judge was right in charging the jury that this was not a way of necessity.

The last matter complained of is, that the judge charged the jury that the plaintiff could not claim the right of way, or of passing out of and into the gateway in question, unless it appeared by the evidence that the plaintiff and those under whom he claimed had been in the uninterrupted possession of the same for twenty years or more after the Commissioners' deed to Mr. Fox.

I see nothing in the circumstances of this case which takes it out of the operation of the general rule of law which the judge correctly stated. There was nothing in the terms of the grant to Mr. Fox which gave him the semblance of a right of way over the close in question. The right exercised by the Schuyler family before the severance was not of a character to constitute it a necessary appurtenant, and as such to pass with the premises to Mr. Fox. Immediately after the grant to Mr. Fox, the heirs of Gen. Schuyler might lawfully have erected a fence or placed any other obstruction upon this close, then their own property, and thereby prevented a passage over it through the gate. This right could only be barred by an adverse user of the easement by the plaintiff, and Mr. Fox under whom he claims, for the full period of twenty years.

CARPENTER, J. concurred.

RANDOLPH, J. The *locus in quo* is within the bounds of defendant's premises, and is no part of the public highway, and although the plaintiff and those under whom he claims have used it as a way from the now residence of the plaintiff to the main public road, for a period considerably more than twenty years without disturbance; yet the time during which the whole premises belonged to the same person cannot be reckoned, for a man cannot have a right of way or other easement in his own premises; what he has thereon must be as owner of the premises, and not as appurtenant to the ownership of another. *Woolrych on Ways*, 70; *Gale & Whately on Easements* 11; 2 *Bing.* 83; 1 *Bos. & Pul.* 371.

The severance took place in 1821, and from that time an adverse right of way over the defendant's premises, commenced and continued until the fall of 1840, the time being less than twenty years, the plaintiff cannot claim the right by prescription, and neither the deed to him or his grantor gives it in terms; but it is insisted that as the premises with the *appurtenances* was conveyed, that this right of way, being that used by Schuyler, and those under him for a long time, was transferred by implication, so that the plaintiff must sustain his claim by implied grant or fail in his suit. When one conveys a lot of land in the midst of his field, or in such other situation that the grantee cannot go to and from the same without passing over the land of the grantor, then the grantee will have a right of way from necessity. 3 *Kent* 388; *Clarke* v. *Cogge, Cro. Jac.* 170; 2 *Arch. Blk. Com.* 35–6 *and Note* (25).

So where there is a conveyance of a mill or other property that cannot be used without the water or other privileges connected with it, they will of necessity pass with the property to which they are attached. *Buckley* v. *Coles,* 5 *Taunt.* 31; *Oakley* v. *Stanley,* 5 *Wend.* 523. And these will pass either with or without the word appurtenances, or anything equivalent thereto. *Gale* v. *Whately,* 46–7, 3 *Tyrwhytt,* 280.

There is a class of cases where the words "appurtenant," or "appertaining thereto," are important in giving full effect to a deed, as in a conveyance of a manor or other large real estate, and all other lots or lands or rights appertaining or belonging thereto—new additional property or rights will pass by means of the words, which the courts have construed as if used in the sense of lying along, usually occupied with, &c. *Dyer* 130; *Cro. Eliz.* 16; *Cro. Chas.* 17, 169; 1 *Bingh.* 483.

The plaintiff cannot sustain his claim to the right of way as growing out of necessity, it is but a mere way of convenience, his whole lot fronts on the same public road, as that to which this carriage-way leads, through his gate and over the premises of the defendant. Such an entrance to his grounds may be convenient and desirable, but not being necessary to the enjoyment of the grounds themselves, do not as a matter of course pass with a deed for the grounds; nor do I see how the usual word appur-

tenances, with the fact of the grantor's previous use of the passage-way ·can give him a right thereto. The same principle would give him a right to pass through the defendant's premises by any other route which his grantor had been accustomed to pass, when he was the owner and possessor of the whole. In *Whalley* v. *Thompson & al.* 1 *Bos. & Pul.* 371, it was held that when one was seised in fee of two adjoining closes A. &. B. over the former of which a way had immemorially been used to the latter, and he devises B. with the appurtenances, that the devisee cannot thereby claim a right of way over A. to B. Eyre, Ch. J., who delivered the opinion of the court, remarking that the word appurtenances would have carried in a devise, an ancient right of way, and that a newly created one would pass by the term "the way now used." As the then premises enclosed by the defendant were within the limits of his title, his part of the highway, and although the enclosure obstructed the plaintiff's passage from his gate to the public highway, yet as the evidence does not shew a title or right of way in him either by grant, prescription, or from necessity, I think the judgment below must be affirmed.

Judgment affirmed.

The CHIEF JUSTICE, and Justice NEVIUS did not hear the argument and expressed no opinion.

CITED *in Smith* v. *State*, 3 *Zab.* 717–724; *Fetters* v. *Humphreys*, 3 *C. E. Gr.* 265; *Fetters* v. *Humphreys*, 4 *C. E. Gr.* 476.