FETTERS, appellant, and HUMPHREYS and wife, and others, respondents.*

19   471
f 63L 251

19   471
f 60   509
65L  210

1. The distinction between easements which are apparent and continuous, and those which are not apparent and continuous, is completely established by adjudicated cases. The former pass on the severance of the two tenements, as appurtenant, without the use of the word appurtenances, but the latter do not pass unless the grantor uses language in the conveyance sufficient to create the easement *de novo*.

---

* Since the decision of this case, Lord Romilly, M. R., in *Thompson* v. *Waterlow*, *Law Rep.*, 6 *Eq.* 36, held that where the owner of two adjoining closes, A and B, executed a conveyance of close A, which

Fetters *v.* Humphreys.

2. A way is a non-apparent and continuous easement. If existent before the seisin of the two tenements is united in the same person, it is extinguished by such unity of seisin ; and whether it was a pre-existent right of way, or is a way opened by the owner and used by him for the convenient occupation and enjoyment of the premises, it has no legal existence during the continuance of the unity of seisin, and upon the severance of the two tenements does not pass, unless it is a way of necessity, or the operative words of the conveyance are sufficient to grant it *de novo*.

3. By a devise to the testator's widow of "the house and lot occupied by me in Market street, in the city of Camden," a way which the testator opened over other of his lands for the accommodation of a barn he erected on the lot devised to his widow, does not pass to her, although during the testator's lifetime it was the only egress from his barn to the street, and was continuously used by him for that purpose.

4. The words "occupied by me," are merely descriptive of the premises devised, and are not sufficient to create an easement of a right of way over other lands of the testator, which was not in existence in legal contemplation during the testator's lifetime.

———

included several parcels, to a purchaser with these general words : "together with all buildings, commons, hedges, ditches, fences, *ways*, watercourses, liberties, privileges, advantages, and appurtenances whatsoever, to the said pieces of land, or any of them appertaining, or with the same or any of them now or heretofore demised, occupied, or enjoyed, or reputed or known as part or parcel of them, or any of them, or appurtenant thereto," a way made and used by the owner during the unity of possession, for his own convenience for agricultural purposes, across B to A, did not pass.    In a subsequent case in the Exchequer, (*Langley* v. *Hammond, Law Rep.*, 3 *Exch.* 161), a lessee surrendered to his lessor a part of the demised premises, "together with all ways, &c., therewith now used, occupied, and enjoyed," with a proviso that the lessor should fence off the premises surrendered from those still occupied by the lessee.  The premises so surrendered consisted of a strip of ground, forming part of a farm yard, with some farm buildings on it, and was bounded on one side by land owned and occupied by the lessor, and on the other side by a hard graveled roadway, made across that portion of the open farm yard still occupied by the lessee, from a gateway in the street up to the opposite fence.  There had always been unity of seisin and of occupation of the whole farm yard, and this roadway had been made and used by former occupiers of the yard, and by the present lessee, for the convenience of carting heavy loads to and from the yard and farm buildings. There was no existing approach to the premises surrendered from the

Fetters *v.* Humphreys.

The opinion of the Chancellor is reported in 3 C. E. Green, 260.

*Mr. T. P. Carpenter,* for appellant.

Richard Fetters, by his last will, left all his estate to his three daughters, subject to the provision made by him for his widow. The provision in favor of his widow was as follows : " I give to my dear wife, Ellen B. Fetters, during her natural life, the house and lot occupied by me," &c.; "and all the furniture in and about my house, and also the sum of $800 a year, so long as she shall live," &c. The testator left real estate in the city of Camden to the amount of $100,000 and upwards, besides a large personalty. The dwelling-house so given, occupied a lot forty feet in front, with an elegant side-yard, cultivated by the testator during his life at great expense. On the rear of the lot stood a stable, access to which was had by an alley opened by the testator, issuing eastwardly at right angles into Third street. This alley was used by the testator during his lifetime, as a passage way to his barn and stable yard.

It was insisted below, and is now urged, that the testator, under the circumstances of this case, obviously meant to give to his widow the use of the whole property *as occupied* by himself, including the passage way to the barn ; without which the barn would be useless, unless by the sacrifice of the elegant garden, so sedulously cultivated by the testator in his lifetime.

lessor's land, and a road constructed for that purpose would have to pass through the lessor's pleasure ground. It was held, that no right to use this roadway as a means of access to the surrendered premises passed by the instrument of surrender.

In *Thompson* v. *Waterlow,* the Master of the Rolls makes a distinction between previously existing ways, which had become extinct by an unity of seisin, and ways made and used by the owner for his convenience, while he was owner of both parcels; holding that the former will pass as ways created *de novo* by the words " heretofore used and enjoyed therewith," but that the latter will not. This distinction was adopted and approved of by Kelley, C. B., in *Langley* v. *Hammond,* but was doubted by Bramhall, B., in the same case.

2 R *

No question is made as to the doctrine laid down by the Chancellor, as to rights of way claimed by implication. It is not claimed that any such *necessity* here exists in the sense in which that word is used in the cases cited by the Chancellor, but that the right of access through this passage way was given to the widow during her natural life. It is urged that it belongs to her as incident to the estate given, upon the obvious *intention* to give the property *as occupied and used* by the testator. This view is not met in the opinion delivered below. The doctrine is well known and will be found strongly applied. See *Doe* v. *Collins*, 2 *T. R.* 498 ; *Doe* v. *Parkin*, 2 *Taunt.* 321 ; *Press* v. *Parker*, 2 *Bing.* 456 ; *Holdfast* v. *Pardoe*, 2 *W. Bl.* 975.

The words "*now occupied by me,*" are, indeed, restrictive, but they give everything within the terms of the description, and incident thereto.

The doctrine of intention (entirely outside of that implication) is more liberally expounded in wills than in deeds. But even in deeds, easements sometimes pass from words showing an intention that they should pass. See *Washburn on Easements, p.* 33, and cases cited.

The *intention*, not the necessity, is shown by this, that otherwise the elegant side yard, created at great expense and the particular object of the testator's regard, must be destroyed, or the use of the barn lost.

The right claimed differs from that of a right of way by implication ; this is personal and during the life of the widow, not permanent as appurtenant to the property.

The rights of a widow are to be favorably construed, and in this case they ought particularly to be so, as the provision made for her out of this large estate is very small.

*Mr. J. B. Dayton*, for respondents.

The opinion of the court was delivered by

DEPUE, J.

The right to the use of the alley in question, is claimed in

the bill as an incident to the premises devised to the appellant.

The words of the devise are as follows: "I give to my dear wife, Ellen B. Fetters, during her natural lifetime, the house and lot *occupied by me,* in Market street, in the city of Camden, together with the lot adjoining the same on the east." The rest, residue, and remainder of his real estate the testator devised to his three daughters, of whom Eliza Humphreys, the respondent, was one.

On a partition of the estate among the daughters, the premises over which was the way in question, were assigned to Mrs. Humphreys. The premises devised to the appellant consisted of two lots adjoining each other, and both fronting on Market street, with a frontage of twenty feet each. The front of the westerly lot was entirely occupied by the testator's dwelling-house. On the easterly lot there were no buildings ; but on the front of this lot there was an ornamental flower garden, extending from the house across the whole front. There was no division fence between the two lots, and the testator occupied both lots as grounds attached to his dwelling-house. On the rear of the westerly lot the testator erected a stable, during his lifetime, from which the only egress was across the easterly lot, and through a lane or alley running from the southeasterly corner over lands assigned to Mrs. Humphreys, in the division, to Third street.

The Chancellor, in decreeing against the complainant, went upon the ground that, during the lifetime of the testator, there was not any easement of a right of way in legal existence, over the premises devised to the respondent, because of the unity of seisin of the two tenements ; notwithstanding the testator continuously used the same for the purpose of passage to and from the stable on the premises devised to his widow.

The distinction between easements which are apparent and continuous, and those which are not apparent and continuous, is completely established by adjudicated cases. The former pass on the severance of the two tenements, as appurtenant, without the use of the word appurtenances, but the

latter do not pass unless the grantor uses language in the conveyance sufficient to create the easement *de novo.* To the citation of authorities on these points by the Chancellor, in his opinion, I will only add a reference to the cases of *Polden* v. *Bastard,* 4 *Best & S.* 263 *; S. C.,* on error to *Exchequer Chamber, Eng. Law Rep.,* 1 *Q. B.* 156 *;* and *Seymour* v. *Lewis,* 2 *Beas.* 439.

A way comes within the description of a non-apparent easement. If existent before the seisin of the two tenements is united in the same person, it is extinguished by such unity of seisin ; and whether it was a pre-existent right of way, or is a way opened by the owner and used by him; for the convenient occupation and enjoyment of the premises, it has no legal existence during the continuance of the unity of seisin, and upon the severance of the tenements does not pass unless it is a way of necessity, or the operative words of the conveyance are sufficient to grant it *de novo.* 11 *Vin. Abr.* 446, 449, *Extinguishment C.; Worthington* v. *Gimson,* 2 *El. & El.* 616 *; Pearson* v. *Spencer,* 1 *Best & S.* 571 *; Dodd* v. *Burchell,* 1 *Hurlst. & Colt.* 113, 118 *; Stuyvesant* v. *Woodruff,* 1 *Zab.* 133 *; Grant* v. *Chase,* 17 *Mass.* 443.

On the argument the insistment was, that the testator intended to allow the appellant the use of this alley as a means of access to the stable, and that that intention is sufficiently expressed in the will, taken in connection with the manner in which the testator used the premises during his lifetime, to amount to a grant of easement *de novo.* To sustain this position, *Doe* v. *Collins,* 2 *T. R.* 498 *; Press* v. *Parker,* 2 *Bing.* 456 *;* and *Bodenham* v. *Pritchard,* 1 *B. & C.* 350 *;* were relied on. In *Doe* v. *Collins,* by a devise in the following words, " to Hannah Clements, I give the house I live in, and garden," certain stables and a coal pen occupied by the testator passed together with the house, though the testator used them for purposes of trade, as well as for the convenience of his house. In *Press* v. *Parker,* under a devise to R. P., " of all my freehold messuage wherein he now lives," and to A. P., of " all my freehold messuages now in the occupation of E," a coal cellar within the boundary of the

messuages in the occupation of E, which had always been used, and was at the time of the making of the will, enjoyed with the premises in which R. P. lived, passed to R. P.   In *Bodenham* v. *Pritchard*, the devise was of " all and singular my *mansion-house* in which I now live, called D., in several parishes of H. and L., in the said county of R., together with all the buildings and lands thereunto belonging, as now enjoyed by me." The testator was the owner in fee of two estates, the one called D., and the other U. H.; the mansion-house was on the former; and the latter estate, which the testator had subsequently purchased, came close up to the mansion-house.  A gate was opened from the garden into one of the U. H. fields, and the testator had removed the fences, which formerly separated several of the fields belonging to the U. H. estate from those belonging to D.  At the testator's death all the premises so united were in his occupation.  By this devise both estates passed.

In these cases, the question was parcel or no parcel.  The description of the premises devised was otherwise so uncertain, that it was necessary to resort to words of occupancy to ascertain the subject matter of the devise, as identifying the premises intended.  Other instances of words of occupancy, as words of description, are to be found in the books. *Co. Litt.* 4 *b.* ; 14 *Vin. Abr.* 87, *Grant*, *Q ; Doe* v. *Burt*, 1 *T. R.* 704 ; *Doe* v. *Hubbard*, 15 *Q. B.* 227.  In such cases, the lands occupied with the house or principal tenement mentioned, pass not as appurtenant, but as parcel of the devised premises, and the words of reference to occupancy, as descriptive of the subject matter of the devise, are only helps to ascertain the premises intended.

In the devise now in question, the descriptive words, " occupied by me," may be resorted to to ascertain what premises were intended.  To that extent, the cases above cited, and similar cases, are applicable to this devise.  With the use of these words, the subject matter of the devise is ascertained to be the two lots fronting on Market street.  It is not pretended that the fee in the alley passed to the appel-

lant as parcel of the premises devised to her. She admits that the fee in the alley passed by the devise to the respondent and her sister. Her claim is of an easement of a right of way over the alley, non-existent in legal contemplation during the lifetime of the testator, and newly created by the devise to her. The cases cited by the counsel of the appellant have no applicability to this question.

The words " occupied by me," being merely descriptive of the subject matter of the devise, are not effective to convey privileges which would not pass as appurtenances. Language of an entirely different import would obviously be required to enlarge the gift, so as to include a grant of a right of way over other lands of the testator, which had not, in fact, been previously opened and used. In legal acceptation, a right of way extinguished by unity of seisin, or which is not a legal right of way because of such unity of seisin, is as completely non-existent as if it was not in fact an existing way. That it was used as a way in connection with the premises devised, has only the effect that the testator by employing words of express reference to such user, may pass the way as a newly created easement. In *Grymes* v. *Peacock*, 1 *Bulstrode* 17, a right of common which was formerly used in the waste of the owner, and had become extinct by unity of seisin, was held not to pass under a grant of the house and land, with all commons appurtenant to the said messuage and close; and Fleming, C. J., said if it had been laid with all commons belonging to the house and usually occupied and enjoyed with the same, with an averment of such former user, this had been good. *Saundeys* v. *Oliff*, Moor 467 ; *Bradshaw* v. *Eyre*, Cro. Eliz. 570 ; *Worledg* v. *Kingswel*, Cro. Eliz. 794 ; and *Clements* v. *Lambert*, 1 *Taunt*. 205; are to the same effect. In *Whalley* v. *Tompson*, 1 Bos. & Pul. 371, a way which had become extinguished by unity of seisin, was held not to be revived or newly created by a devise of the dominant tenement with the appurtenances ; and the court say, that if the devise had been " with the ways now used," it would have been a devise of the close with an

easement newly created.   In other cases, the words "with the ways now used," or " used and enjoyed therewith," are mentioned as the appropriate method of passing actual, but not legally existent ways, as newly created easements.   2 *Saund.* 401 *a, note* 2 *; Kooystra* v. *Lucas,* 5 *Barn. & Ald.* 830 *; Harding* v. *Wilson,* 2 *Barn. & Cress.* 96, *per* HOLROYD, J.; *Plant* v. *James,* 5 *Barn. & Ald.* 791, *per* LORD DENMAN, approved in error in *James* v. *Plant,* 4 *Ad. & E.* 749 *; Barlow* v. *Rhodes,* 1 *C. & M.* 448, *per* BAILEY, B.; *Pheysey* v. *Vicary,* 16 *M. & W.* 491, *per* PARKE, B.; *Worthington* v. *Gimson,* 2 *El. & El.* 618 *; Gale & Whatley on Easements* 48.

*Polden* v. *Bastard,* cited above, is a case very much in point.   In that case, the testatrix at the date of the will was the owner of two adjoining houses and premises ; she occupied one herself, in the yard belonging to which was a pump ; the other house was, and had been for some time, occupied by T. A. as a tenant, and he, with the knowledge of the testatrix, had been accustomed to go into the yard and draw water from the pump for the use of his house, there being no water supply on the premises.   It was held, that a right to the use of the pump did not pass under a devise of " the house, and out-house, and garden, as now in the occupation of T. A."   This case is entitled to great consideration, not only from the similarity of the language of the devise to that of the devise now in question, but also from the fact that both in the Queen's Bench, and in the Court of Exchequer Chamber, *Doe* v. *Collins, Press* v. *Parker,* and *Bodenham* v. *Pritchard,* the cases here relied on, were cited to sustain the claim of a newly created easement.   In both courts they were declared not to be authorities bearing on that point ; and words of reference to occupancy, more nearly approaching an indication of an intention to confer the privilege of an easement than those used in this devise, were held insufficient for that purpose.   In the Exchequer Chamber, Earle, C. J., in delivering the opinion of the court, says :   " In construing wills, a construction has been put on the word ' enjoyed,' so as to make it a term of general

description, and it has been sometimes held to pass any benefit which has been possessed by the occupier of the premises devised; but our judgment must proceed on the particular words used, which are, ' the house, out-house, and garden as now in the occupation of Answood.'    This is simply a specific description of the property."

The distinction between words of occupation and words of enjoyment, or of user, when the subject matter of consideration is an easement, rests upon the soundest principles of construction.    Words of occupation in their legal signification refer to corporeal, as words of enjoyment or of user do to incorporeal hereditaments.    Where rights are claimed by force of the words used, and there is nothing in the context to show that they were used in any other than their legal meaning, the soundest principles of construction require that we should adhere to their strict legal signification.    There is nothing in the context of this will to show that the words " occupied by me" were used in any other than their usual sense, as words merely of identification of the corporeal hereditament devised.

I am of opinion, that there is not on the face of this will sufficient evidence of an intention to create an easement *de novo*, to pass a right of way to the appellant over the alley in question.    The decree of the Chancellor is affirmed with costs.

The decree was affirmed by the following vote:

*For affirmance*—BEASLEY, C. J., BEDLE, DALRIMPLE, DEPUE, OGDEN, VAIL, VREDENBUGH, WALES, WOODHULL.  9.

*For reversal*—CLEMENT, KENNEDY. . 2.