38 N.J. Super. 488 (1956)
119 A.2d 472
A.J. AND J.O. PILAR, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LISTER CORPORATION, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1955.
Decided January 10, 1956.
*490 Before Judges CLAPP, JAYNE and FRANCIS.
*491 Mr. Alan V. Lowenstein argued the cause for appellant (Mr. Howard T. Rosen, of counsel).
Mr. Sanford Freedman argued the cause for respondent (Mr. C. Wallace Vail, attorney).
The opinion of the court was delivered by JAYNE, J.A.D.
It is not inappropriate first to mention that this action was instituted in the Chancery Division against the defendant by Anthony J. Pilar and John O. Pilar, then partners trading as A.J. and J.O. Pilar. Subsequently the corporation A.J. and J.O. Pilar, Inc., became the proper party in interest to prosecute the action. One of the former plaintiffs, John O. Pilar, had died. By reason of the eventualities the original cause of action was reconstructed as disclosed by the amended complaint, counterclaim, and responsive pleadings, in the light of which the trial and the propriety of the final judgment are to be considered.
Omitting definite references to the many details that the record of the case embraces, it will be adequately serviceable for present explanatory purposes to say that the entire area of the land within the territorial boundaries with which we are here concerned was during a period of many years under one ownership, latterly, for example, under that of Factory Associates, Inc. The area is situate, generally speaking, north of Chapel Street and Lister Avenue in the City of Newark.
Many years ago the Central Railroad of New Jersey acquired by easement a right of way passing laterally east and west across it over and upon which a so-called siding spur of railway tracks was laid for use in the transportation of freight to the established receiving and shipping points on the property.
In December 1926 a severance of the previously existing ownership occurred in consequence of the conveyance of the southerly portion of the area by Factory Associates, Inc. to John O. Pilar through whom the plaintiff corporation has indirectly but successively derived its title. We shall hereinafter refer to that portion as the Pilar property. The area *492 contiguous to the northerly line of the railway easement and extending northerly therefrom was ultimately purchased by the defendant in December 1953. This section we shall call the Lister property. The adjacency of the two divisions can be readily envisioned if we explain that the railroad right of way separates them.
There are certain physical characteristics of the Pilar and Lister properties respectively in their proximity and relation to the railroad right of way that attain particular relevancy to the controversial subject matter of the present litigation.
Also many years ago, presumably after the installation of the railroad siding and evidently prior to 1895, several buildings were erected on the northerly end of the present Pilar property along the southerly edge of the railroad siding, which structures have doors and platforms on their north sides, obviously to be used to facilitate the carriage of freight to and from the railroad cars and the particular building. There is evidence that those buildings or some of them and their attached platforms have been devoted continuously, perhaps in some variable degree, to such use for more than half a century.
There is also testimony that there has been and is now an open space immediately to the north of the railroad siding platforms over which the horse-drawn and more recently the motorized trucks have traversed, turned and backed up to the platforms. That open space so used has never been owned by the Pilars. It is at present owned by the defendant.
It may be wondered by what course of passage the vehicular delivery trucks reach that locality on the Pilar property over a thoroughfare on the Lister property. The answer is that from the northerly side of Lister Avenue, which like the railroad siding runs generally east and west, the vehicles enter a previously established passageway of 15 feet in width extending along the easterly side of the Pilar property, proceed northerly thereon, cross the railroad siding, then turn left and move west on the Lister property to the plaintiff's platforms.
*493 It needs to be stated that while there is documentary evidence of the establishment of the passageway leading northerly from Lister Avenue, there has never been any such documented confirmation of the privilege of the owners or occupants of the present Pilar property to operate vehicles westerly from the established passageway over the present Lister property to the entrances and platforms of the plaintiff's buildings.
We may pause here to comment that an acquaintance with the transcript of the testimony suggests the reasonable probability that had it not been for the erection of a fence on the neighboring Kussy property and by reason of the inordinately increased indiscriminate parking of passenger cars in the open space to which we have referred, this litigation between the named parties would not have been precipitated.
The defendant recently denied the plaintiff a continuance of the privilege of such access over the open space to its buildings and loading platforms. The plaintiff prosecutes this action to enjoin the defendant's interference and in quest of a judgment granting it either (1) a prescriptive easement or (2) an implied easement. It is from the judgment qualifiedly in favor of the plaintiff that the defendant appeals.
We respectfully recognize the factual determinations of the experienced trial judge and the resultant conclusion orally expressed by him in his decision of the case. We quote the portion of his decision which is of particular significance:
"The deed to Pilar reserved to them the use of the 15-foot right-of-way leading from the street to the defendant's property. Such use would be futile were the plaintiff not able to cross over the defendant's property to its loading platforms, so by implication it was clearly intended that the Pilars were to pass and repass over the defendant's land.
The present suit was instituted in June of 1954. The Pilars acquired their property in 1927, so that the proofs disclose that for more than twenty years they, and those in privy to them, have used the defendant's land from the 15-foot right-of-way to the loading platforms. Such use has been so open, notorious, hostile and adverse as to establish an easement or right-of-way. I am also satisfied that for many years prior to 1927, and probably since the Pilar building was built, such use has continued without interruption. *494 There is no proof that the plaintiff at any time abandoned its use of the defendant's property.
The plaintiff should have the right to continue to pass and repass over the defendant's land to and from the 15-foot right-of-way to its loading platforms as heretofore."
From the foregoing we deduce that the trial judge resolved from his appraisal of the credibility of the evidence that the plaintiff had not only succeeded in establishing the alleged easement by the requisite prescriptive user but had also proved the origin and existence of the easement to have been granted by implication of law and fact. We shall accordingly discuss in that order each of those determinations.
We have previously canvassed in a relatively succinct fashion the subjects of the acquisition of corporeal property by adverse possession and of incorporeal hereditaments by prescription in Predham v. Holfester, 32 N.J. Super. 419 (App. Div. 1954), with some supply of authoritative citations.
In the consideration of the constituent elements of adverse possession, we appreciate that such matters as the nature, extent, continuity of use, and the circumstances of acquiescence, permission or hostility amid which the use was pursued are relevantly componant elements of fact to be determined by the trial court. Consult, Morrissey v. Jackson, 3 N.J. Super. 365 (Ch. Div. 1949).
While we are conscious of the deferential regard to be accorded the factual findings of the trial judge, we are quite definitely of the opinion from the circumstances disclosed by the evidence that the continued use by the Pilars of the vehicular approach to their buildings over the land to the immediate north of the railroad siding was not during the requisite period a defiant, hostile, and adverse appropriation by the Pilars. Assuredly a user to be recognized in the law as adverse must be shown to have been, inter alia, hostile. Poulos v. Dover Boiler & Plate Fabricators, 5 N.J. 580, 588 (1950); Plaza v. Flak, 7 N.J. 215 (1951); Predham v. Holfester, supra. Rather would the use disclosed by the evidence in the present case appear to have been indulgent and permissive in character.
*495 Whether the alleged easement here asserted had its inception in an implied grant is a question of greater delicacy.
One of the earliest recognized sources, perhaps other than that of a way of absolute necessity, from which arose the concept of the creation of an easement by an implied grant was the severance by a grantor of an entire tract of real property by the conveyance of a part thereof to another.
In general, the basic principle upon which rests the creation of easements in that manner is that the parties to the conveyance are presumed to act with reference to the actual, visible and known condition of the properties at the time and to intend that the benefits and burdens manifestly belonging respectively to each part of the entire tract shall remain unchanged.
Too numerous and too readily at hand to need extensive citation in this memorandum are the reported decisions and authoritative dissertations concerning the essentialities of implied easements, notably the characteristics of the servitude imposed during the period of common ownership upon the one portion of the tract for the obviously beneficial and fairly deserved use of the other alienated portion.
Some of the elderly decisions in our jurisdiction on the subject which reappear in the field of recollection are Brakely v. Sharp, 9 N.J. Eq. 9 (Ch. 1852); Brakely v. Sharp, 10 N.J. Eq. 206 (Ch. 1854); Seymour v. Lewis, 13 N.J. Eq. 439 (Ch. 1861); Fetters v. Humphreys, 18 N.J. Eq. 260 (Ch. 1867), affirmed 19 N.J. Eq. 471 (E. & A. 1868); Central Railroad Co. v. Valentine, 29 N.J.L. 561 (E. & A. 1862); Kelly v. Dunning, 43 N.J. Eq. 62 (Ch. 1887), affirmed sub nom. Dunning v. Kelly, 46 N.J. Eq. 605 (E. & A. 1890); Toothe v. Bryce, 50 N.J. Eq. 589 (Ch. 1892); Larsen v. Peterson, 53 N.J. Eq. 88 (Ch. 1894); Greer v. Van Meter, 54 N.J. Eq. 270 (Ch. 1896); Taylor v. Wright, 76 N.J. Eq. 121 (Ch. 1909); Faas v. Wallwork, 96 N.J. Eq. 541 (Ch. 1924). Some decisions of informational pertinency of more recent rendition are Colonial Building-Loan Ass'n of Jersey City v. Bergen Mutual B. & L. Ass'n, 124 N.J.L. 92 (E. & A. 1940); Boylan v. Loy Corp., *496 128 N.J. Eq. 460 (Ch. 1941), affirmed 130 N.J. Eq. 203 (E. & A. 1941); Blumberg v. Weiss, 129 N.J. Eq. 34 (E. & A. 1941); Jancisin v. H.F. Realty Co., Inc., 8 N.J. Super. 568 (Ch. Div. 1950).
See, in general, 2 American Law of Property 255, § 8.31; 3 Tiffany, Real Property 253, § 779; 1 Thompson, Real Property (perm. ed.), 630, § 390; 17 Am. Jur. 944; 34 A.L.R. 233; Burling v. Leiter, 272 Mich. 448, 262 N.W. 388, 100 A.L.R. 1321; 164 A.L.R. 1001; 28 C.J.S., Easements, § 30, p. 686; Restatement, Property, § 474. For historical information consult Gale on Easements (12th ed. 1950), pp. 106, 127.
Although one cannot in the true sense have an easement over one's own land, yet where one during the unity of ownership utilizes a part of his land for the benefit of another part, it is for convenience of expression said that a quasi-easement exists. Upon the conveyance by the owner of one of such parts, an easement corresponding to the preexistent quasi-easement may in certain circumstances arise, either for the benefit of the part conveyed as against the part retained by the grantor, which is called an "implied grant," or for the benefit of the part retained by the grantor as against the part conveyed, which is referred to as an "implied reservation." The implications may go either way depending on the essential circumstances.
It is important here to realize that we are considering in the present appeal the creation of an easement by an implied grant as distinguished from an implied reservation, of a quasi-easement. Vide, Blumberg v. Weiss, supra; Schachter v. Fider, 5 N.J. Super. 426, 428 (App. Div. 1949). It seems true to state that an implied reservation is more difficult to establish than is an implied grant. Slear v. Jankiewicz, 189 Md. 18, 54 A.2d 137 (Ct. App. 1947).
In reason and in logic it is the unexpressed intention of the grantor and grantee in the conveyance that constitutes the genuine basis for the implication of an easement in favor of the grantee. Our judicial decisions have in the main been confined to a declaration of what particular characteristics *497 the preexisting quasi-easement must have had in order to generate the inference and presumption of the intention of the parties that the easement pass as appurtenant to the land conveyed.
Really those designated characteristics constitute merely the sanctioned guides to be recognized in the endeavor to determine the scope of the conveyance. 3 Tiffany, Real Property (3d ed. 1939), § 780. The adjectives uniformly employed to describe the requisite nature and character of the preexisting quasi-easement are "apparent," "continuous," "permanent," "necessary."
In Kelly v. Dunning (1887), supra, 43 N.J. Eq., at page 69, it was said:
"Three things are essential to the creation of an easement by this method. First, a separation of the title; second, that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and so obvious or manifest as to show that it was meant to be permanent; and, third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained."
A comprehensive examination of the lengthy succession of the reported decisions discloses that the descriptive adjectives to which we have referred have been clothed with more appropriate significations in these cases than ordinarily ascribed to their strictly literal import. Vide, 1 Thompson, Real Property (perm. ed.) §§ 405-411, pp. 405 et seq.
From the authoritative sources hereinbefore identified, the precedential conviction may be entertained that implied easements are restricted to equivalent servitudes which are apparent, permanent, and of such a character of correspondence to the preexisting quasi-easement that it may, from the evidence, be presumed that the grantor and grantee in reasonable probability desired and intended their preservation. Proof of a condition of mere temporary convenience is insufficient to support the implication of an easement. Stuyvesant v. Woodruff, 21 N.J.L. 133 (Sup. Ct. 1847).
But the use of the adjective "apparent" is not intended limitedly to include only those preestablished easement usages *498 which are patently and inescapably conspicuous. It embraces as well those usages the existence of which is noticeable and discoverable by the due and reasonable attentiveness of a prudent and diligent purchaser.
Thus, a hidden pipe or drain may by reason of obvious objects be deemed an apparent condition. 58 A.L.R. 824, 832. There must, however, be some visible characteristic of the property which would upon prudent and diligent inspection indicate the probable existence of the easement.
The import of the adjectives "continuous" and "permanent" is not intended to refer exclusively to the continuity of enjoyment but as well to the permanence of the quasi-easement in its impliedly intended adaptation to the dominant and servient tenements.
And so, similarly, there is an accepted modified meaning of "necessary." What is undoubtedly meant is that the easement shall in all cases be reasonably necessary to the proper enjoyment of the dominant tenement, or to its reasonable and beneficial enjoyment and use and not absolutely necessary.
All of the decisions make it evident that the necessity need not be absolute in the sense that there can be no enjoyment of the land whatsoever without the easement. Here, again, necessity or the reasonable necessity is not the basic factor that creates the implied easement, but it is one of the elements of consideration in ascertaining the real intention of the parties. In other words, the extreme desirability of the easement is a material consideration of gradational weight in support of the inference that the conveyance of the land was intended not only to embrace the land alone but of the land with the easement appurtenant thereto.
The evidence in the instant case, if viewed in its aspect most favorable to the plaintiff's claim, informs us that at the time of the severance of the ownership by the conveyance of the portion to the plaintiff's predecessor there existed in open view on the property the railroad siding, the several buildings obviously styled for warehouse or other commercial or industrial use situate alongside of the railroad, and having *499 doorway entrances and platforms facing the siding, in one of which structures an elevator was also constructed at a location therein convenient to the loading and unloading platform. And then also at some time perceptible was the presence in front of one of the platforms of the wooden planking between the rails of the railroad track.
Recognizing, then, the applicable principles of law and the factual component, the following considerations emerge. First, unlike a conspicuous driveway the width, course, and extent of which was reasonably distinct, the grant which the court is asked to imply in the conveyance to the plaintiff's predecessor in title is a vagrant privilege to be exercised within an area having no definitely distinguishable circumference. And then, as previously revealed, the passageway from Lister Avenue along the easterly side of the Pilar property was established by an express grant. It was stated in Karason Co. v. Anglo-American Leather Co., Inc., 136 N.J. Eq. 344 (Ch. 1945) that "the express grant of certain easements raises an inference that no other easements were intended to pass by the same deed."
Another circumstance is that the plaintiff is not seeking to establish and sustain the implied easement as against the severance grantor but against a subsequent bona fide purchaser of the northern portion whose representative surveyor inspected the then existing physical conditions of the adjacent Pilar property.
If we were to concur in the finding of the trial judge that the representatives of the defendant in fact observed all of the objects, structures, and physical conditions disclosed by the evidence, would their presence in the locality have indicated to a reasonably vigilant, circumspect, and contemplative person that the plaintiff had an apparent, continuous, permanent, and reasonably necessary easement within the legal signification of those terms, to avail itself of continued vehicular access to their buildings over the southerly portion of the Lister property? We resolve that question in the negative.
It must be appreciated that the modern practice is to compose the terms of deeds of conveyance more explicitly *500 expressive than yesteryear of the intentions of the parties thereto so their recordation will be regarded as authentically evidential. Nevertheless the doctrine of the implied grant of appurtenant easements ought not to be rendered obsolete in our jurisprudence. The judicial power to declare the existence of an intentional easement by implication may still be conceivably needed and employed in a given case to effectuate in the law a just and equitable result. But courts should never be insensible to changing realities.
In our opinion the judicial power to which we refer should at the present time be exercised most cautiously, particularly where the parties to the litigation are other than the immediate parties to the conveyance in which the grant is sought to be implanted by implication. An implication of liberal proportions in such cases would indubitably impair the confidence in the reliability of certified title examinations of the public records and might expose to a degree of uncertainty the stability of titles to real estate.
These are rational reasons why the proof of all of the requisite and essential elements of an alleged implied grant should be clear and convincing. We conclude that the evidence adduced in the present action did not attain that prerequisite and indispensable substance and quality.
The judgment is therefore reversed.