HUBERT A. GUYER, trading as Hubert A. Guyer Company, v. HAVEG CORPORATION, a corporation of the State of Delaware, and HAVEG INDUSTRIES, INC., a corporation of the State of Delaware.

*(November* 30, 1964)

CHRISTIE, J., sitting.

*Albert L. Simon,* Wilmington, and *Samuel Spiller,* for plaintiff.

*John P. Sinclair,* Wilmington, for defendants.

Superior Court of Delaware, New Castle. No. 1479 Civil Action, 1962.

CHRISTIE, Judge.

Plaintiff, Hubert A. Guyer, trading as Hubert A. Guyer Company, contends that defendants, Haveg Corporation and Haveg Industries, Inc., (collectively referred to herein as Haveg) entered into five different oral contracts with plaintiff. Under the terms of each alleged contract, Guyer was to carry out certain machine processes on missile components for Haveg. By the terms of each alleged contract Haveg granted plaintiff the exclusive right to supply all Haveg's needs for such work until Haveg no longer had any such requirements.

Plaintiff further contends that Haveg breached all of the contracts by placing orders for the same services with other concerns. As to four of the contracts, plaintiff contends that breaches occurred the same day the contracts were made. Plaintiff explains that he continued to perform the services called for by the contracts for some time because he was not aware that the contracts had been breached. Haveg has paid plaintiff for all the work he actually did. Plaintiff here seeks damages in the amount of $1,191,000.00 for losses caused by setting up expenses and by discounts given in anticipation of additional requirements and for anticipated profits alleged to have been lost because Haveg stopped using Guyer's services and contracted with others for similar work.

The record shows that plaintiff did certain processing for which he was paid at a price agreed upon between the parties, but Haveg denies the existence of the alleged exclusive long-term contracts. On motion for summary judgment, Haveg raises the following specific defenses:

1. Haveg's employees who are alleged to have entered into the contracts had no authority, express, implied or apparent, to bind Haveg on the alleged exclusive long-term contracts.

2. The alleged contracts would be unenforceable because of the statute of frauds.

3. The alleged contracts would be void because the terms are so indefinite.

4. The alleged contracts would be teminated at the will of either party.

I shall take up each of defendants' contentions separately although some of them are interrelated.

(1)

In answers to interrogatories, plaintiff names specific

employees of Haveg who plaintiff said entered into the contracts on behalf of Haveg. The record establishes that none of the named individuals had authority to place any orders for materials and services except when so authorized by the head of the Aero Space Division on the Research and New Products Division and no employee has or ever has had authority to bind Haveg to exclusive long-term contracts such as those alleged by Guyer as a basis of this action. Thus, the record shows that the individuals alleged to have bound Haveg, lacked authority to do so. Plaintiff has not come forward with any evidence of express authority.

Plaintiff next contends that Haveg's employees had implied or incidental authority to act since the services alleged to have been contracted for were routine matters in the usual and ordinary course of business of Haveg. Implied authority is actual authority to act which is implied from the circumstances and which does not depend directly on any express grant of authority.

Although the services here to be rendered were usual and ordinary services required by Haveg in connection with its missile business, the record shows that an exclusive contract to supply requirements so long as such requirements exist was neither usual nor ordinary. In fact, Haveg appears to have had a policy against entering into contracts of indefinite duration such as those which plaintiff alleges Haveg entered into. None of the surrounding circumstances and nothing defendants did would indicate to defendants' agents that the agents had authority to enter into such unusual contracts. See *Colish v. Brandywine Raceway, Ass'n*, 10 Terry 493, 119 A. 2d 887, 891, (Superior Court 1955). Since an implied authority depends on the actual relationship between the principal and agent and not upon what a third party may have been told or may believe as to such relationship, it is clear here that plaintiff has produced no evidence upon which a finding of implied authority could be based.

Plaintiff also relies on the alleged apparent authority of Haveg's employees to bind the Company. Apparent authority may be found to exist even where, as between the principal and the alleged

agent, there is no authority to act. It arises when the principal creates by its words or conduct the reasonable impression in a third party that the agent has authority to act. Neither the agent nor the principal need to be under the impression that such authority exists. Apparent authority may be created by the same method as that which creates implied authority except that the significant manifestation of the principal is to the third person rather than the agent. It may result from (1) the general manner by which the corporation holds out an officer or agent as having power to act or (2) the acquiescence in his acts of a particular nature, with actual or constructive notice. 2 Fletcher On Corporations (Perm. Ed.) 363 as quoted in *Colish v. Brandywine Raceway Ass'n,* supra. See also Restatement of Agency.

The record here shows that some of those with whom plaintiff dealt had titles such as "Vice President" "Director of Development" or "Division Manager" and that one or more of them had authority to authorize contracts of some kind for labor and material. These officers or those obviously designated by them to deal with Guyer urged Guyer to make the necessary and costly arrangements to supply Haveg's needs, and they at least appeared to indicate that such preparation and expense would be justified. Plaintiff says they went further.

From Guyer's viewpoint the conduct of the Haveg officers and employees is at least consistent with the existence of wide authority to contract vested in Haveg personnel. The mere belief that one such contract existed (even if mistaken) coupled with plaintiff's uncontradicted statement that he had such a contract may be some evidence of apparent authority in Haveg employees to enter into other similar agreements. Although the matter is not free from doubt, viewing the evidence, as I must at this stage, in the light most favorable to the plaintiff, I'm not prepared to rule as a matter of law that there is no evidence upon which a finding of apparent authority could be based.

Finally, plaintiff relies on the related doctrine of promissory estoppel as such doctrine is set forth in the Restatement of Contracts:

"A promise which the promisor should reasonably expect to

induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." (Restatement, Contracts Sec. 90)

It seems to me the estoppel which may exist as to this case is better stated in the Restatement of Agency as follows:

"(1)   A person who is not otherwise liable as a party to a transaction purported to be done on his account, is nevertheless subject to liability to persons who have changed their positions because of their belief that the transaction was entered into by or for him, if

"(a)  he intentionally or carelessly caused such belief, or

"(b)  knowing of such belief and that others might change their positions because of it, he did not take reasonable steps to notify them of the facts.

"(2)   ***

"(3)   Change of position, as the phrase is used in the restatement of this subject, indicates payment of money, expenditure of labor, suffering a loss or subjection to legal liability." (Restatement, Agency 2nd Sec. 8B) See also 2 Fletcher Cyclopedia Corporations (Perm. Ed.) Sec. 773.

▮▮▮▮▮   There appears to be issue of fact as to whether Guyer changed his position because representations were made to Guyer on which Guyer was known to rely. There may be an estoppel under such circumstances. *Chrysler Corporation v. Quimby*, 1 Storey 264, 144 A.2d 123, 131, 885 (1958).

(2)

The Delaware statute of frauds reads in pertinent part as follows:

"No action shall be brought to charge any person upon any

agreement * * that is not to be performed within the space of one year from the making thereof * .* * unless the contract is reduced to writing, or some memorandum, or notes thereof, are signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing * *." (6 *Delaware Code* Sec. 2714).

The alleged contracts appear to be unenforceable under the terms of the above statute. However, Delaware Courts have held that the statute of frauds does not apply to contracts of indefinite duration requiring the performance of a specific act which may be performed within one year even if performance within one year is unlikely. *Devalinger v. Maxwell,* 4 Penn. 185, 54 A. 684 (1903); *Duchatkiewicz v. Golumbuski,* 12 Del. Ch. 253, 111 A. 430 (Court of Chancery, 1920). A corresponding rule is widely applied where the performance required by the contract is of a continuing nature rather than a specific act. Corbin on Contracts (1950) Sec. 446; 129 A.L.R. 534. There are a number of jurisdictions where a contrary view has been expressed. *Burkle v. Superflow Manufacturing Co.,* 137 Conn. 488, 78 A.2d 698 (1950); *Cohen v. Bartgis Bros. Co.,* 264 App.Div. 260, 35 N.Y.S. 2d 206 (1942) affirmed 289 N.Y. 846, 47 N.E.2d 443 (1942).

The cases dealing with a contract of fixed duration fall within a different category. A contract to perform services for a specified period exceeding one year violates the statute of frauds even though the contract may be terminated within one year. *Hull v. Brandywine Fibre Products Co.,* 121 F.Supp. 108 (d.1954); *Harris v. Porter,* 2 Harr. 27 (1835).

Defendant says that the parties must have contemplated a contractual relationship of more than one year's duration. It points out that performance under the alleged contracts would have been a continuing thing. Even if Haveg's needs for the services under the alleged contracts could terminate within one year, the contract would not have been fully "performed" since Haveg would have a continuing contractual obligation, if its need for such services should reoccur. Upon such a theory, some contracts to supply requirements so long as

such requirements exist, have been held to be within the terms of the statute of frauds. See *Cohen v. Bartgis Bros. Co.,* supra.

In Delaware, the application of the statute of frauds has been strictly limited. I conclude, in any event, that Haveg's need for the services to be rendered under the alleged contracts might have actually and finally terminated within one year and that for this reason the statute of frauds finds no application to the alleged contracts.

### (3)

Defendant contends that the alleged contracts are void for uncertainty.

Under the terms of the alleged contracts Haveg was obligated to purchase for all of its requirements from plaintiff so long as Haveg had such requirements. Contracts of indefinite duration are looked upon with disfavor by the courts, especially when they are oral. Those seeking to enforce such contracts are often faced with difficulties of proof, *Lee v. Jenkins Bros.,* 268 F.2d 357 (2 Cir., 1959). The more harsh, rash or improbable the terms of such an alleged contract appears to be, the more difficult it may be to establish its existence or its enforceability.

It is possible that the alleged contracts will be deemed unenforceable, but I am not prepared to so hold on the record before me. There is some indication in the record that in the light of the prior relationship between the parties and of all the surrounding circumstances the terms were clear enough to form the bases of enforceable mutual contracts. I am of the opinion, therefore, that a final evaluation of the evidence on this point must await its complete presentation at trial.

### (4)

Finally, defendant contends that contracts such as those alleged to exist in this case are as a matter of law terminable at the will

of either party. In support of this contention, defendant cites two cases from Kentucky dealing with contracts for permanent employment. When the record is complete, defendants' contention on this point may prove to be decisive but all requirement contracts are not in and of themselves invalid or terminable at will.

Local business customs, prior or contemporaneous business relations, and other circumstances may indicate that reasonable limitations are to be implied as terms of the contracts. The unusually large damages claimed by plaintiff do not necessarily indicate that the oral contracts must be deemed to be invalid or terminable at will under Delaware law. Again all the surrounding circumstances must be considered by the Court in the light of the decided cases before a proper evaluation may be had. This is difficult to do on motion for summary judgment where the record is incomplete and all inferences must be drawn against the moving party. It is impossible to do in this case where there are interrelated disputes of fact as to the existence of the contracts themselves, as to various conversations, and as to other circumstances surrounding the relationship of the parties.

\* \* \*

Defendants' motion for summary judgment is denied. It is so ordered.