Richard B. JUDGE, Defendant
Below, Appellant,

v.

Ina M. RAGO, Arunah S. Abell, Joseph E.
McMahon, Henry J. Cadell, Margrit W.
Vanderryn, Mrs. Robert J. Van Am-
berg, John F. Lynch, James Van Swe-
den, Phyllis Power, Susana Roveda,
Anne R. Patteson and Peter Parker,
Plaintiffs Below, Appellees.

Supreme Court of Delaware.

Submitted: Aug. 29, 1989.
Decided: Jan. 19, 1990.
Rehearing Denied Feb. 22, 1990.

David A. Drexler and Eric C. Howard, Morris, Nichols, Arsht & Tunnell, Wilmington, for appellant.

Norman C. Barnett, Schab & Barnett, P.A., Georgetown, for appellees.

Before CHRISTIE, C.J., MOORE, and WALSH, JJ.

WALSH, Justice:

This is an appeal from a decision of the Court of Chancery that granted declaratory judgment relief to certain owners of beach-front townhouses in a development known as Sea Strand, in Dewey Beach, Delaware. The Court of Chancery ruled that an adjacent property owner, Richard B. Judge ("Judge"), had no right of easement, express or implied, to use the designated access ways of Sea Strand. We find the Court of Chancery's findings and conclusions to be amply supported by the evidence and free of any error of law and, accordingly, affirm.

I

Sea Strand is a complex of four townhouse buildings denominated A, B, C, and D, which are located on both sides of Chesapeake Street in Dewey Beach. The buildings contain a total of thirty-six individual townhouse units. Building A is built on a plot of land known as Block 49, which is located on the south side of Chesapeake Street; this property is not involved in this litigation. Buildings B, C, and D are built on Block 50, which is adjacent to an undeveloped parcel known as Block 50½. The Sea Strand buildings are linked by a series of small roadways that open onto Chesapeake Street. These roadways appear on the publicly recorded plots of the development, where they are designated as "access ways." In addition, the plots mark certain regions of Block 50 as "common areas." Judge claims no interest in the common areas, but asserts that he may use the access ways to traverse between Chesapeake Street and Block 50½.

Sea Strand was constructed in the mid–1960s as the result of a joint venture between Rehoboth by the Sea Realty Company ("RSRC") and D.F.D., Inc. ("DFD"). At that time, RSRC was the owner in fee of Blocks 49, 50 and 50½. DFD served as developer and promoter for the townhouse project. Upon their completion, the townhouses were sold to various individuals; the plaintiffs-appellees (the "owners" or the "townhouse owners") all own townhouses located on Block 50. RSRC retained ownership of the land underlying and surrounding the townhouses and in conjunction with each sale, it granted each townhouse owner a sixty-year lease of the land under his unit. Each lease also gave the buyer a right to use the common areas and access ways in common with other townhouse owners. Under the terms of the lease, the townhouse owners are responsible for the maintenance of the land and the payment of taxes and other charges assessed against it. Thus, although RSRC retains title to the land, it has ceded most of the incidents of ownership—the burdens as well as the rights—to the townhouse owners.

On December 30, 1987, RSRC sold Block 50½ to Judge for the sum of $1,000,000. By quitclaim deed, RSRC purported to convey a right of access across Block 50, although it made no warranty that such an easement actually existed. Judge proposes to construct seven single-family homes on the newly acquired property.

In order to establish the nature of their rights under their respective leases, vis-a-vis Judge's claim of access, the owners filed a suit for declaratory judgment in the Court of Chancery. Following a two-day trial, the Vice Chancellor ruled that Block 50 was not burdened by any easement appurtenant to Block 50½. *Rago v. Judge,* C.A. No. 1294, Hartnett, V.C., 1989 WL 25802 (Mar. 16, 1989). In its analysis of the owners' claims, the court found that the relevant terms of the leases were, at best, ambiguous. The court then examined parol evidence in an attempt to determine the original intent of the parties to the leases and concluded that RSRC had never intended to reserve an easement.

## II

In this appeal, we are presented with issues implicating both contract interpretation and the common law of real property. Because both matters involve questions of law, our review of these matters is plenary. *Rohner v. Niemann*, Del.Supr., 380 A.2d 549 (1977); *Fiduciary Trust Co. of N.Y. v. Fiduciary Trust Co. of N.Y.*, Del.Supr., 445 A.2d 927, 930 (1982). However, insofar as the court below relied upon parol evidence to aid in its interpretation of the Sea Strand leases, its factual findings are entitled to greater deference. *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671 (1972).

An easement may be created in any of several ways: by express grant or reservation, by implication, by necessity, or by prescription. *Leach v. Anderl*, N.J.Super., App.Div., 218 N.J.Super. 18, 526 A.2d 1096, 1099 (1987). Judge argues, primarily, that RSRC reserved an express easement allowing access to Block 50½ when it leased Block 50, and that it was free to transfer that easement in conjunction with the sale to Judge. Alternatively, Judge contends that if ambiguity in the leases precludes the finding of an express easement, an implied easement should be found to have arisen from the dealings of the parties. No evidence suggests the existence of a prescriptive easement, and although there is reason to believe that Block 50½ is landlocked, Judge has never asserted, in this litigation, that an easement by necessity has arisen.

In arguing that RSRC reserved an express easement, Judge relies upon three types of documents: the sales contract for each Sea Strand townhouse, the ground lease executed by each townhouse buyer, and the publicly recorded plots of the development. A representative sales contract identifies the property conveyed as:

Sea Strand Unit [ ], Building [ ], Block 50, Rehoboth By The Sea, Lewes–Rehoboth Hundred, Sussex County, Del. and leasehold interest to that land beneath said building and as shown on Sea/Strand plat, said plat to be presented at settlement—leasehold to be for 60 years under standard Rehoboth By The Sea lease,

more fully described in Schedule A attached to and made part of this contract.

A standard lease describes the demised premises as:

All that certain lot, piece and parcel of land situate in Lewes and Rehoboth Hundred, Sussex County, Delaware more particularly described as follows, to wit:

... Unit No. [ ] Building [ ], as shown on a plot of Sea–Strand, in Block No. 50, together with a right in common to the Common Areas, as shown on said Plot, and subject to the access agreement shown thereon, as surveyed and plotted by Wingate & Eschenbach, Registered Surveyors, on [ ], and filed for record in the Office of the Recorder of Deeds, at Georgetown, Delaware, in Plot Book No. [ ], Page [ ].

Judge asserts that the language "subject to the access agreement shown thereon" was intended to establish the respective rights of the townhouse owners and RSRC to use the access areas.

Unfortunately, the recorded plots do not contain explicit language that may form the basis for a verbal agreement; they are merely schematic diagrams of Block 50, with certain portions delineated as buildings, common areas, and access ways. Moreover, each building is recorded on a separate plot that displays only those access ways directly adjacent to the building. Nevertheless, Judge argues that the depiction of the access ways on the plot constitutes the access agreement. He asserts that the owners of property displayed on the plots may use all access ways to which they are adjacent, as well as such other access ways as may be needed to reach Chesapeake Street. Thus, the owner of a townhouse in Building C may use access ways shown on the plot of Building C, as well as access ways on the plot of Buildings B and D that may be needed to reach Chesapeake Street. By the same token, because the access ways on the plots of Buildings B and C touch the boundary between Blocks 50 and 50½, Judge argues that he, and his successors in interest, may use the Sea Strand access ways to traverse

between his property and the public roadways.

The documents that the Vice Chancellor was required to interpret are hardly models of clarity. They do, however, reveal a few salient facts. Under the sales contracts, Sea Strand residents own their townhouses subject to ground leases. RSRC, in turn, owns Block 50 in fee, subject to the fact that it "has granted, demised, leased and let" the property to the individual townhouse owners, "with all the rights, privileges, easements and appurtenances thereunto attaching and belonging unto the said Lessee[s], [their] heirs and assigns, for and during the full term of Sixty (60) years." The leases, in turn, are subject to "[a]ll restrictions, easements and rights-of-way appearing of record in the chain of title," and "[t]he reservation, restriction, covenants and limitations ... set forth [in the leases]." With the exception of the purported access agreement, however, no recorded encumbrance or lease term even arguably suggests that Block 50 is burdened by an easement appurtenant to Block 50½.

■ Because it creates an interest in land, the grant of an express easement must satisfy the Statute of Frauds to be valid. 37 C.J.S. *Frauds, Statute of* § 71; *Burns v. Baumgardner*, 303 Pa.Super. 85, 449 A.2d 590 (1982); *Merchants' Trust Co. of Newark v. Vollick*, N.J. Ch., 103 N.J.Eq. 167, 142 A. 645 (1928). Judge argues that any written evidence will suffice, as long as it demonstrates a meeting of minds; thus, a diagram may serve as well as words. The issue posed, however, is not whether the various "writings," however cryptic, constitute an agreement but whether Judge's property can be said to have been within the contemplation of the parties to the writings. Since the intention of the parties was never reduced to words that readily can be construed by a court, the question then becomes whether the parties to the recorded documents and plots created an access agreement for the benefit of Lot 50½.

■ As the Court of Chancery found, the recording of any plot allows the owners of the depicted property to travel on reflected private streets to which they are adjacent, as well as other streets needed to reach a public highway. *Reinhardt ex rel. Eves v. Chalfant*, Del. Ch., 12 Del.Ch. 214, 110 A. 663, 664–65 (1920), *aff'd*, Del.Supr., 12 Del.Ch. 389, 113 A. 674 (1921); *Highway Holding Co. v. Yara Eng'g Corp.*, N.J. Supr., 22 N.J. 119, 123 A.2d 511 (1956). Although the plot of Building C does not depict the access ways adjacent to Building D, nevertheless residents of Building C may use these access ways to reach Chesapeake Street. This is true as a matter of law, whether or not the plots constitute a formal "access agreement."

■ The rule in cases such as *Reinhardt* and *Highway Holding* serves to protect grantees. Thus, a purchaser or lessee of property is entitled to rely upon the state of affairs represented in a recorded plot of the subject property. *Highway Holding*, 123 A.2d at 516–20. Although he must derive any interest through RSRC, a predecessor grantor, Judge latches onto the reasoning of these cases, arguing that Block 50½ is a lot depicted on the Sea Strand plots. From this assertion, he concludes either that RSRC was a beneficiary of the supposed access agreement or that a right of access arises from the simple fact that some of the depicted access ways touch the boundary of Block 50½. This argument lacks a factual premise.

The record does not support the claim that Block 50½ is depicted on the plots of Sea Strand. The property is neither delineated nor labelled on the plots in question; nothing is shown to the north of Sea Strand but an empty margin. One viewing the plot of any Sea Strand building would immediately conclude that the depicted building was part of a larger development, since each plot is labelled "Plot of Building [ ]—Sea Strand." Upon examining all of the Sea Strand plots together, one can readily infer that the development ends at the edge of Block 50 and that the depicted access ways are intended to serve the development. An examination of the plots does not convey notice that Block 50 and the property to the north of Sea Strand had

ever been owned by the same entity. Moreover, the plots provide no evidence that the access ways were ever intended to serve the property to the north. Thus, if one views the plots as an explicit access agreement, there is no basis for concluding that RSRC was intended to benefit from it. If, however, the Sea Strand residents' rights are seen to arise from the rule in cases such as *Reinhardt,* Judge still cannot benefit since his property is not shown on the plots in question.

█ If the plots are examined in a light most favorable to Judge, they can do no more than create an ambiguity. Even if it is assumed that the depiction of the access ways constitutes an access agreement and that the location of some of the access ways along the boundary of Blocks 50 and 50½ *might* have made RSRC a beneficiary of that agreement, the plots alone would not allow us to conclude with certainty that RSRC had reserved such an easement. When a contract is ambiguous, parol evidence may be used to determine the intent of the parties.[1] *Rohner v. Niemann,* 380 A.2d 549, 552. Moreover, if this intent cannot be ascertained with certainty, a conveyance of real property must be construed broadly to favor the grantee. *Maciey v. Woods,* Del.Supr., 38 Del.Ch. 528, 154 A.2d 901, 904 (1959). With these rules of construction in mind, we still find little support for Judge's position.

As we have already noted, RSRC relinquished almost all of the incidents of ownership of Block 50 to the lessees. The townhouse owners are responsible for taxes and other charges assessed against the land, they must make needed repairs to the premises, they bear the risk of loss to the property, and they may mortgage their leaseholds in conjunction with a mortgage of their townhouses. RSRC, by contrast, has the right to collect a modest ground rent. It may enter the premises only to make necessary repairs that a lessee refuses to make, and it may bill the lessee for those repairs. Finally, it must give its approval to an assignment of the lease. Beyond these limited rights, RSRC has relinquished all control over the property until the years 2024 and 2025 (barring a default on the part of any lessee). Thus, while Sea Strand is not, strictly speaking, a condominium, it was clearly intended that townhouse owners undertake most of the benefits and burdens of ownership. One of these benefits is control over the access of others to the land. Without some clear language to the contrary, the broad terms of the Sea Strand leases suggest that the lessees enjoy a similarly broad right to use the land free of the burdens imposed by further development on the adjacent property.

In addition, the Court of Chancery found evidence that RSRC had not intended to make any use of Block 50½ when it originally sold the Sea Strand units. The Court also found that this fact was communicated to prospective purchasers by the developer, DFD, and its real estate agent, Anderson–Stokes, Inc.[2] Finally, upon examining the site, the Vice Chancellor found that the size and configuration of the access ways suggest that they were built not as thoroughfares but simply as driveways to allow residents access to their carports. Because these findings are adequately supported by the record, we accept them as further evidence of the intent underlying the Sea Strand leases. Thus, even if the terms of leases are considered ambiguous, we find

---

1. We agree with Judge that the language used to reserve an express easement need not be "plain and direct" to be valid. *Cf. Willow Tex, Inc. v. Dimacopoulos,* N.Y.App., 68 N.Y.2d 963, 510 N.Y.S.2d 543, 503 N.E.2d 99 (1986). However, the parol evidence offered must clearly prove that the ambiguous language used was intended by all parties to create such an easement.

2. Judge urges that DFD and Anderson–Stokes had no authority to act as RSRC's agent. At the very least, DFD and Anderson–Stokes had express authority to determine who would purchase townhouses and enter into ground leases. We believe that this authority carried with it the implied power to make reasonable and necessary representations. *See Liberty Mut. Ins. Co. v. Enjay Chem. Co.,* Del.Super., 316 A.2d 219 (1974); *Guyer v. Haveg Corp.,* Del.Super., 58 Del. 88, 205 A.2d 176 (1964), *aff'd,* Del.Supr., 58 Del. 535, 211 A.2d 910 (1965). Because the representations made do not contradict explicit terms of the leases, they provide evidence of the parties' intent.

no evidence to support Judge's position that RSRC reserved an express easement appurtenant to Block 50½.

## III

■ Judge contends that if the documents he relies upon are ambiguous, an easement for his benefit arises by implication. He argues that a court should not presume a grantor to have conveyed away access to his retained lands and that ambiguity in the grant should be resolved in favor of the reservation of an easement. This argument is premised on a misunderstanding of the nature of an implied easement. As we have already noted, an ambiguous conveyance may be found to contain an *express* easement if extrinsic evidence demonstrates that the parties intended that result. If no evidence can resolve the ambiguity, however, the terms of the conveyance will be construed in favor of the grantee, not the grantor. *Maciey v. Woods,* 154 A.2d at 904. Thus, Judge's attempt to rely upon a semblance of ambiguity in the Sea Strand leases does not aid his claim of easement by implication.

An easement by implication arises under a limited set of circumstances. *See Potter v. Gustafson,* Del. Ch., 41 Del.Ch. 229, 192 A.2d 453 (1963) (example of implied easement). If a single party owns two parcels of property and uses one to benefit the other, no actual easement is created since only one owner is involved. Because this use resembles an easement, however, it is referred to as a "quasi-easement." *A.J. & J.O. Pilar, Inc. v. Lister Corp.,* N.J.Super., App.Div., 38 N.J.Super. 488, 119 A.2d 472, 476 (1956), *aff'd,* 22 N.J. 75, 123 A.2d 536 (1956). If the property owner then conveys the "quasi-servient tenement," he may retain an actual easement appurtenant to the land he keeps, even if the conveyance is wholly silent on the question of easements and even if the easement is not absolutely

necessary for the enjoyment of the retained property. *Id.* 119 A.2d at 476–77. Thus, if a property owner has traditionally crossed parcel A to reach parcel B and he sells parcel A, he may continue to cross that parcel. It is presumed that a grantor in this situation does not wish to abandon the preexisting land use; the grantee is put on notice by observing evidence of the preexisting use. *Id.* 119 A.2d at 477. The key to an implied easement is the existence of a quasi-easement.[3]

■ In this case, there is no evidence in the record that RSRC ever used Block 50 to reach Block 50½. The access ways were constructed in conjunction with the sale and lease of the Sea Strand development and thus do not reflect any preexisting use of the parcels. Indeed, the access ways end at the boundary of Block 50½, which is clearly marked by a line of shrubbery.

It is true, as Judge points out, that "'public policy ... is favorable to the full utilization of land.'" *Potter v. Gustafson,* 192 A.2d at 456 (quoting 17A Am.Jur. *Easements* § 42). For this reason, if a landowner landlocks one parcel by conveying another, an easement of necessity will arise across the conveyed land, even if no quasi-easement existed. *See Pencader Assocs., Inc. v. Glasgow Trust,* Del.Supr., 446 A.2d 1097 (1982).[4] Judge has never alleged the existence of an easement of necessity, however. Thus, we have no basis for considering, nor did the Court of Chancery, whether Block 50½ is truly landlocked or whether the scope of an easement of necessity could be expanded to allow extensive development of a landlocked parcel.

In conclusion, we find that the Sea Strand leases and recorded plots reveal that RSRC never intended to reserve an easement across Block 50 for the benefit of Block 50½. Even if these documents are viewed as ambiguous, there is no extrinsic

---

**3.** The existence of a quasi-easement would also provide evidence that an ambiguous term in a conveyance was intended to create an express easement.

**4.** Properly speaking, an easement of necessity is a form of implied easement, since necessity (like the existence of a quasi-easement) allows a

court to infer that the grantor intended to reserve access. *Pencader Assocs.,* 446 A.2d at 1099–1100. However, it is helpful to view an easement of necessity as analytically distinct from an implied easement arising from a preexisting use.

evidence that suggests an intent to reserve such an easement. Moreover, there is no evidence to support the existence of an easement by implication. For these reasons, the judgment of the Court of Chancery must be AFFIRMED.