# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| REYBOLD VENTURE GROUP IX, LLC, | § § § | No. 124, 2025 |
| Plaintiff Below, Appellant, | § § § § | Court Below: Court of Chancery of the State of Delaware |
| v. | § § § | C.A. No. 2020-0982 |
| SUMMIT PLAZA SHOPPING CENTER, LLC, | § § § | |
| Defendant Below, Appellee. | § § § | |

Submitted: January 7, 2026
Decided: March 18, 2026

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices, constituting the Court *en Banc*.

Upon appeal from the Court of Chancery. **REVERSED**.

John H. Newcomer, Jr., Esquire, R. Eric Hacker, Esquire, (*argued*), MORRIS JAMES LLP, Wilmington, Delaware, *for Plaintiff Below, Appellant*.

Phillip A. Giordano, Esquire, GORDON, FOURNARIS & MAMMARELLA, P.A., Wilmington, Delaware, *for Defendant Below, Appellee*.

**SEITZ**, Chief Justice:

Reybold Venture Group IX, LLC and Summit Plaza Shopping Center, LLC own adjoining properties along Routes 301 and 896 in Middletown, Delaware. They have been sparring over whether a cross-easement exists that would allow traffic from Reybold's parcel to use the highway entrance on Summit's parcel. Without the easement, Reybold is restricted to right turns in and out of its property, which, Reybold argues, makes its property less valuable. The Summit entrance has a right turn in and out and a left turn out.

A Magistrate in Chancery ruled that the property owner established a cross-easement between the parcels and Reybold could enforce the cross-easement. After review of exceptions, the Vice Chancellor disagreed with the Magistrate's report. The court held that a record plan notation establishing a cross-easement was a "note" under the County Code, and only the County can enforce record plan notes. The court also held that, other than the record plan note, there was no evidence that the property owner intended to create a cross-easement between the two properties.

On appeal, Reybold argues that the court should have accepted the Magistrate's recommendation because the property owner signed and certified the record plan with the note stating that "a cross easement is hereby established." And, according to Reybold, it can enforce a private express easement regardless of any County limitations on enforcing record plan notes. We agree and reverse.

I.

A.

Most of the relevant facts are undisputed. Viola Carter owned 196 acres bordering Routes 301 and 896 in Middletown, Delaware. In 1983, she planned to sell part of her property to a developer who wanted to build a shopping center. A shopping center required a rezoning and subdivision of the property.

Under the New Castle County Code in effect at the time, the rezoning and subdivision process followed three stages. First, the owner, developer, or their representative submits an exploratory plan. The exploratory plan is a sketch of the proposed subdivision with general locations for buildings and parking. Next, if the County found the exploratory plan acceptable, the applicant submits a preliminary plan with more engineering details and calculations. The New Castle County Department of Planning's Subdivision Advisory Committee ("SAC"), composed of state and local agencies, reviews the preliminary plan. The Department of Planning ("Department") collects the agencies' comments and provides them to the applicant. Finally, those comments are incorporated into a record plan, and, after County approval, the record plan is recorded by the property owner.

Franco R. Bellafante, Inc., an engineering firm hired by the developer, submitted an exploratory plan to rezone and subdivide the Carter property. The Department reviewed the exploratory plan and found that it was generally

satisfactory but needed to address certain items. The same day, Bellafante submitted a preliminary plan that included the suggested revisions.

The SAC reviewed the preliminary plan and provided comments. The Delaware Department of Transportation ("DelDOT") also provided comments. According to a DelDOT internal memo, it wanted one highway entrance to consolidate the entrance and exit as future development occurred:

> The Department would be amenable to pursuing a cross-easement agreement between subject parcel and the R–2 parcel with respect to combined entrance-exit facilities in the future when and if the adjacent residential parcel is developed with a use or uses other than residential. [DelDOT] agreed and said that [it]s comments would be forthcoming and will state basically the above.[1]

To address DelDOT's concern, the Department requested the following note on the preliminary plan:

> A CROSS EASEMENT IS HEREBY ESTABLISHED BETWEEN THE SUBJECT PARCEL AND OTHER LANDS OF VIOLA CARTER, FOR VEHICULAR AND PEDESTRIAN TRAFFIC. ADDITIONALLY, A COMBINED ENTRANCE/EXIT FACILITY MAY BE REQUIRED IN THE FUTURE WHEN AND IF THE LANDS LABELED "OTHER LANDS OF VIOLA CARTER" ARE DEVELOPED FOR USES OTHER THAN RESIDENTIAL[2]

Bellafante incorporated all comments into the final record plan. Viola Carter

---

[1] App. to Appellant's Opening Br. at A109 [hereinafter A__].

[2] A111; App. to Appellee's Answering Br. at B119. The "subject parcel" is the Summit parcel. The "other lands of Viola Carter" include the Reybold parcel. A96. The parties agree that "[t]he [n]ote was a requirement of the Delaware Department of Transportation to obtain its approval of the [p]lan." A97.

signed the record plan and certified as follows:

> I, VIOLA CARTER, WIDOW, HEREBY CERTIFY THAT I AM THE OWNER OF THE PROPERTY SHOWN ON THIS PLAN, AND THE SUBDIVISION PLAN THEREOF WAS MADE AT MY DIRECTION, THAT I ACKNOWLEDGE THE SAME TO BE MY ACT AND PLAN AND DESIRE THE SAME TO BE RECORDED AS SUCH ACCORDING TO LAW, AND IN ACCORDANCE WITH THE SUBDIVISION AND LAND DEVELOPMENT REGULATIONS OF NEW CASTLE COUNTY, AND THAT ALL STREETS SHOWN AND NOT HERETOFORE DEDICATED ARE HEREBY DEDICATED TO THE PUBLIC USE, AND THAT ALL PROPOSED MONUMENTS WILL BE SET AT THE LOCATIONS SHOWN, AND FURTHERMORE, I VOLUNTARILY AGREE TO SUBDIVIDE AND DEVELOP THE LAND IN ACCORDANCE WITH THE CONCEPTS SHOWN ON THE APPROVED RECORD PLAN.[3]

After receiving final approval from the Department and the County, the landowner recorded the final record plan in the Recorder of Deeds Office.

A year later, Carter sold to a developer another part of her property subject to the record plan. The developer built a strip shopping center, Summit Plaza, which is now owned by Summit.[4] The Summit property intersection has a right in/right out and a left turn out. Each deed in the Summit property chain of title refers to the record plan, which contains the easement note, and states that the conveyance is subject to all easements and restrictions of record.[5]

---

[3] A111.

[4] A95, A125–26, A458, A465.

[5] A112–26, A312.

## B.

In 2020, Reybold bought the Viola Carter land south of Summit's property to build a self-storage facility. The Reybold property was part of the record plan. DelDOT would only approve a "rights in, rights out" entrance for the Reybold property, meaning DelDOT limited Reybold's tenants to right-hand turns to enter and exit the property. According to Reybold, the property was more valuable if tenants could also turn left onto the roadway using Summit's intersection. Reybold raised the cross-easement with Summit. Summit refused to recognize the cross-easement.

## C.

Reybold sued Summit in the Court of Chancery to enforce the cross-easement. The case was assigned to a Magistrate in Chancery. After a one-day trial, the Magistrate issued a final report recommending that the court find that Carter established by clear and convincing evidence an express cross-easement across Summit's property and that Reybold could enforce the cross-easement against Summit.[6]

First, the court held, Reybold demonstrated that, through the note on the

---

[6] *Reybold Venture Grp. IX, LLC v. Summit Plaza Shopping Ctr., LLC*, 2024 WL 3595578, at *1, *6–8 (Del. Ch. July 31, 2024). Although a Vice Chancellor can refer a matter to a Magistrate, a Magistrate can only make a recommendation to the court. A Vice Chancellor must conduct a *de novo* review of the report before entering a final judgment. *DiGiacobbe v. Sestak*, 743 A.2d 180, 182–84 (Del. 1999).

record plan, Carter unambiguously reserved an express cross-easement to Summit's property for pedestrian and vehicular access. As the court observed, the record plan note stated that "[a] cross-easement is hereby established," which unambiguously created an easement.[7] And Viola Carter's signature on the record plan signified her agreement with the contents of the record plan, including establishing a cross-easement.[8]

Next, the Magistrate found that the New Castle County Code did not prevent Reybold from enforcing the cross-easement. Under the New Castle County Code in effect at the time, Section 20-70(a) stated:

> The provisions of this chapter, pursuant to which a record plan has been approved and all notations appearing on a record plan, other than those pertaining to certificates of occupancy, when the record plan is duly recorded, shall have the effect of restrictive covenants and shall run with the land covered by the record plan against the owners who have executed the record plan, their heirs, successors and assigns and in favor the county council until the record plan is amended or superseded; provided, that *the right to enforce such covenants shall lie exclusively with the county council* and the fact that several parcels belonging to different owners are similarly restricted or that a restricted parcel is divided among several different owners, shall not imply the creation of any private property or contract rights, on account of reliance or otherwise, among or between such several owners.[9]

---

[7] *Reybold*, 2024 WL 3595578, at *3 (citation omitted).

[8] *Id.* at *7.

[9] New Castle Cnty. C. § 20-70(a) (1982) (emphasis added). The parties agree that a later annexation of the properties by the Town of Middletown does not change the law applied to the dispute.

According to the Magistrate, however, Reybold was not attempting to enforce a plan note, which was prohibited by the County Code. Instead, it was enforcing an express cross-easement reflected in, but not dependent upon, a note in the record plan.[10] The Magistrate recommended that the court enter judgment for Reybold and enforce the cross-easement against Summit.

The Court of Chancery considered exceptions to the report and found for Summit.[11] The Vice Chancellor observed that "[t]he threshold dispute is whether the Note is a 'notation' under [the County Code]."[12] Concluding that it was, the court found that, under County law at the time, only the County could enforce notes on a record plan.[13] With the cross-easement reflected in a note on the record plan, the court held that Reybold could not enforce the cross-easement.

The Vice Chancellor also held that, other than the note, there was no evidence that Viola Carter intended to create an express easement. The court observed that, even though Carter signed the record plan, she was not involved in the planning process. And, according to the court, Carter's certification on the record plan only

---

[10] *See Reybold*, 2024 WL 3595578, at *8–9.

[11] *Reybold Venture Grp. IX, LLC v. Summit Plaza Shopping Ctr., LLC*, 2025 WL 658760, at *6, *12 (Del. Ch. Feb. 28, 2025).

[12] *Id.* at *6.

[13] *Id.* at *8–9, *12.

confirmed that she was the owner of the property and that she approved the record plan. It did not, the court held, reflect Carter's "idea or expression" to create an easement. The court entered judgment for Summit.

D.

On appeal, Reybold argues that the court erred "by disregarding the legal significance of Carter's certification and signature, by considering parol evidence, by improperly shifting burdens, and by failing to address Summit's inconsistent conduct."[14] According to Reybold, the note, combined with Carter's signature and certification on the record plan, were "prima facie evidence of Carter's intent to create an easement."[15] We review the issues of law presented in this appeal *de novo*.[16]

II.

As recounted above, the Vice Chancellor characterized the threshold dispute as whether "the Note is a 'notation' under [the County Code]."[17] If so, according to the court, under the County law in effect at the time, only the County can enforce

---

[14] Opening Br. at 5. Reybold raises other arguments on appeal, but the first issue is dispositive.

[15] *Id*.

[16] *Ravindran v. GLAS Tr. Co. LLC*, 327 A.3d 1061, 1077 (Del. 2024) (reviewing questions of contract interpretation *de novo*); *Croda Inc. v. New Castle Cnty.*, 282 A.3d 543, 547 (Del. 2022) (reviewing questions of statutory interpretation *de novo*).

[17] *Reybold*, 2025 WL 658760, at *6.

notes on the record plan. The court found that a notation is a note for purposes of County law. Therefore, Reybold could not enforce the note reflecting the cross-easement.

We see the threshold dispute differently. The threshold issue is whether a property owner has established a private cross-easement binding her property when she signs and certifies a record plan containing a note that says a cross-easement has been established. If so, as the Magistrate held, the County's note enforcement restriction was "irrelevant."[18] This is because "nothing in the [C]ode expressly limit[s] a property owner from including her own notes in a plan" or "precludes using such notes to establish, preserve, or memorialize an express easement."[19] Stated another way, it is the private cross-easement that Reybold seeks to enforce, not the record plan note. Thus, we turn to whether Viola Carter established an express private cross-easement by signing the record plan with a note establishing the cross-easement. If so, there is no dispute that it can be enforced against the Summit property.[20]

---

[18] *Reybold*, 2024 WL 3595578, at *8.

[19] *Id.* at *9. The Magistrate also observed that the County Code states that its note enforcement restriction is "not intended to replace any deed restriction, covenant, easement, or any other private agreement on the use of land." *Id.* (citing U.D.C. § 40.20.410).

[20] As the Magistrate held, the cross-easement is an easement appurtenant, and runs with the land, meaning it binds future purchasers like Summit. *Id.* at *7–8.

A.

The Court of Chancery has helpfully summarized the law governing express easements:

> "An easement is a non-possessory interest in real property, granted for a particular purpose, enforceable of right and not depend[e]nt for its continued existence on the will of the grantor." An express easement "may be contained within the language of a deed or in a separate document." A court may find that an express easement exists if the writing "contain[s] plain and direct language evidencing the grantor's intent to create a right in the nature of the easement." "No specific words are required so long as the writing clearly reflects the grantor's intent to create an easement."[21]

Here, it is apparent that an express cross-easement was created – the record plan note says unambiguously that "a cross easement is hereby established . . . ."[22] The record plan note is a statement "in a separate document," and in "plain and direct language." Thus, the remaining friction with the Vice Chancellor's ruling is whether Viola Carter, as the individual who signed and certified the record plan as the property owner, intended to create a right in the nature of an easement.

On several grounds, the Court of Chancery held that Viola Carter did not intend to create an express cross-easement: (1) she was not involved in the plan review process; (2) her "single act of signing and certifying the Record Plan" was

---

[21] *Buckeye Partners, L.P. v. GT USA Wilmington, LLC*, 2022 WL 906521, at *29 (Del. Ch. Mar. 29, 2022) (cleaned up).

[22] A111.

insufficient because it did not refer to the cross-easement; (3) the "Note itself would have to establish a private easement" but that "is forbidden by Section 20-70(a)," which does not allow "the creation of any private property or contract rights;" and (4) DelDOT insisted on the note and therefore it was not a "bilaterally negotiated contract presumably reflective of the parties' objectively evaluated intent."[23]

At the outset, we disagree with what the Vice Chancellor saw as legal impediments to enforcing the private cross-easement. Easements need not be bi-lateral agreements, meaning that DelDOT need not be a party to the easement.[24] And a record plan note was not required to establish the easement.[25] Also, the record plan note did not violate County Code Section 20-70(a) because, as the Magistrate observed, the record plan note reflected a private easement established to secure governmental plan approval (it was not an easement agreement with New Castle County), and Section 20-70(a) did not "replace any deed restriction, covenant, easement, or any other private agreement on the use of land."[26]

---

[23] *Reybold*, 2025 WL 658760, at *10–11.

[24] *See Judge v. Rago*, 570 A.2d 253, 255 (Del. 1990) (stating that an easement may be created in several ways, such as "by express grant or reservation, by implication, by necessity, or by prescription").

[25] *See Alpha Builders, Inc. v. Sullivan*, 2004 WL 2694917, at *4 (Del. Ch. Nov. 5, 2004) (explaining a property owner may create an easement by express grant in a deed or separate document).

[26] U.D.C. § 40.20.410; *Reybold*, 2024 WL 3595578, at *7 n.78, *9 (citing *Green v. Templin*, 2010 WL 2734147, at *10, *16 (Del. Ch. July 2, 2010) (enforcing an easement in a recorded subdivision plan); *see Alpha Builders*, 2004 WL 2694917, at *4; *see also Black v. Staffieri*, 2014 WL 814122, at *2 (Del. Feb. 27, 2014) (TABLE) (finding an express easement exists if the writing has plain

This leads us to the main question on appeal – what is the effect of Viola Carter's certification and signature on the record plan containing a note reflecting the private cross-easement? It is true that Viola Carter was not the applicant and was not involved in the rezoning and subdivision approval process. Here, the developer's engineer and not the property owner applied for the rezoning and subdivision approvals.

But the property owner's signature on a record plan is more than a ministerial act. As explained earlier, Viola Carter signed the final record plan certifying that she was "the owner of the property shown on this plan" and the plan "was made at [her] direction . . . ."[27] She acknowledged that the plan was her "act and plan" and she "voluntarily agree[d] to subdivide and develop the land in accordance with the concepts shown on the approved record plan."[28] Even though the developer's engineer applied for government approvals, in the end it was Viola Carter's record plan. The note reflecting a cross-easement was in the record plan. Nothing more was needed to affirm Viola Carter's establishment of a private cross-easement

and direct language evidencing grantor's intent to create an easement). We agree with the Magistrate that *The Greylag 4 Maintenance Corp. v. Lynch-James*, 2004 WL 2694905 (Del. Ch. Nov. 18, 2004) is distinguishable. There, the court held that the county had the exclusive right to enforce a building restriction note under Section 20-70(a). Here, Reybold is not attempting to enforce a note related to a code requirement. Instead, it is enforcing a private easement not required by the Code. *Reybold*, 2024 WL 3595578, at *8.

[27] A111.

[28] *Id.*

reflected in the record plan note.

Holding otherwise would undermine the certainty and reliability of record plans in the land use planning and development process. Future property purchasers should not be able to defeat a private express easement by claiming that the property owner "only" signed and certified the record plan. The landowner's record plan signature and certification avoid disputes like the present one where a future property purchaser like Summit claims that the property owner never established an express easement binding the property. The landowner, and thus future purchasers, are bound by the landowner's signature and certification on the record plan.

III.

By signing and certifying a record plan containing a note reflecting a private express cross-easement, the Viola Carter property was subject to a cross-easement. Summit, as a subsequent purchaser, is bound by the cross-easement. The judgment of the Court of Chancery is reversed, and judgment is entered for Reybold in accordance with the Magistrate's report.